QUORUM SALES, INC. and Muñoz, Hockema & Reed, Appellants,

v.

John SHARP, Comptroller of Public Accounts of the State of Texas; Martha Whitehead, Successor to Kay Bailey Hutchison, Treasurer of the State of Texas; and Dan Morales, Attorney General of Texas, Appellees.

No. 03–94–00541–CV.

Court of Appeals of Texas, Austin.

Aug. 30, 1995.

Alan S. Notinger, Arter, Hadden, Johnson & Bromberg, Dallas, for appellants.

Dan Morales, Attorney General, Jim B. Cloudt, Assistant Attorney General, Taxation Division, Austin, for appellees.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

ABOUSSIE, Justice.

This case presents the issue of whether the purchaser of an aircraft must be a certificated or licensed carrier in order for the aircraft sale to be exempt from sales tax. Appellants

Quorum Sales, Inc. and the law firm of Muñoz, Hockema & Reed (collectively, "Taxpayers") brought suit against John Sharp, as Comptroller of Public Accounts of the State of Texas; Martha Whitehead, as Treasurer of the State of Texas; and Dan Morales, as Attorney General of the State of Texas (collectively, the "Comptroller") seeking judicial review of their claim that the sale of an aircraft was tax-exempt. Following cross-motions for summary judgment, the trial court granted the Comptroller's motion and denied the Taxpayers', holding that the sale was taxable. We will affirm the trial court's judgment.

## FACTUAL BACKGROUND

On or about March 6, 1990, Quorum executed an agreement to sell a Mitsubishi Diamond 1A aircraft to the law firm of Flores, Muñoz, Hockema & Reed, predecessor to appellant Muñoz, Hockema & Reed (the "firm"). Flores, Muñoz, Hockema & Reed had previously represented to Quorum's agent that the aircraft, when purchased, was to be used "for charter under FAA Part 135."[1] This representation was intended to alert Quorum that the aircraft sale was exempt from sales tax under the exemption set forth in section 151.328(a)(1) of the Tax Code.[2]

On December 15, 1990, the firm entered into an operating agreement with AMR Combs, Inc., a holder of an air carrier certificate issued by the Federal Aviation Administration (the "FAA") and maintained in accordance with FAA Part 135. The operating agreement provided, among other things, that AMR Combs would operate the aircraft under its certificate for common carrier charter operations.

The Comptroller audited Quorum for the period of October 1, 1984 through June 30, 1990, and issued a notice of sales tax due. After a hearing on Quorum's request for a redetermination, the Comptroller found a de-ficiency of $140,768.31, including interest, for sales tax attributable to the aircraft sale. Taxpayers paid the assessed tax under protest and then filed the instant lawsuit. *See* Tex.Tax Code Ann. § 112.051 (West 1992). The trial court granted the Comptroller's motion for summary judgment and denied Taxpayers' motion, determining that Taxpayers should not recover the tax paid under protest. Taxpayers appeal, asserting in two points of error that the trial court erred in granting the Comptroller's motion for summary judgment and in denying their motion.

## DISCUSSION

Generally, sales tax is imposed at the time of sale on sales of tangible personal property, including aircraft. *See* Tex.Tax Code Ann. §§ 151.051, .005(1) (West 1992). However, sales tax will not be imposed on aircraft sales that meet the criteria for the tax exemptions set forth in Tax Code section 151.328. *See* Tex.Tax Code Ann. § 151.328 (West 1992 & Supp.1995). Statutory exemptions from taxation are to be strictly construed. *North Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex.1991). The exemption claimant bears the burden of clearly showing that it falls within the statutory exemption. *Id.* All doubts are to be resolved in favor of the taxing authority and against the claimant of the exemption. *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 272 (Tex.1979), *cert. denied,* 444 U.S. 1016, 100 S.Ct. 667, 62 L.Ed.2d 645 (1980).

The sales tax exemption applicable to the instant cause exempts aircraft sales to "a person *using the aircraft as a certificated or licensed carrier* of persons or property." Tex.Tax Code Ann. § 151.328(a)(1) (West Supp.1995) (emphasis added). The meaning of the phrase "certificated or licensed carrier" underlies the controversy; this statutory language has been in effect unchanged since

---

1. *See* 14 C.F.R. pt. 135 (1995) (entitled "Air Taxi Operators and Commercial Operators").

2. Section 151.328(a)(1) provides:
    (a) Aircraft are exempted from the [sales and use] taxes imposed by this chapter if:
    (1) sold to a person using the aircraft as a certificated or licensed carrier of persons or property; . . . .
    Tex.Tax Code Ann. § 151.328(a)(1) (West Supp. 1995).

1961.[3] While the Tax Code does not define "certificated or licensed carrier," the Comptroller has twice adopted an administrative rule defining a similar phrase.

Before 1985, the Comptroller defined a "licensed and certificated carrier" as *"the aircraft . . .* used to transport persons or property for hire in the regular course of business by a person authorized by the appropriate Federal or State agency to be a common or contract carrier." *See* 7 Tex.Reg. 1177–78 (1982) (former 34 Tex.Admin.Code § 3.297(a)(1)) (emphasis added). Taxpayers contend that this definition is correct and, thus, that the exemption applies when the purchaser's planned *use* of the aircraft is for common carrier operations. In other words, the exemption applies to all aircraft sales in which the aircraft will be operated by an FAA common carrier certificate holder regardless of whether the purchaser itself is a common carrier certificate holder.

Since 1985, the Comptroller has defined a "licensed and certificated carrier" as *"[a] person* authorized by the appropriate United States agency or by the appropriate state agency within the United States to operate an aircraft, . . . as a common or contract carrier transporting persons or property for hire in the regular course of business." 34 Tex.Admin.Code § 3.297(a)(1) (1995) (emphasis added). The Comptroller considers its new definition to be more consistent with the Tax Code's language.[4] Tex.Comp.Pub. Acc'ts, Hearing No. 27,853 (1991), 1991 WL 246281, at 3. The Comptroller urges that this definition is applicable to the aircraft sales transaction in the instant cause, maintaining that the exemption does not focus on the use of the aircraft but on the aircraft *purchaser.* In other words, the exemption applies only to aircraft sales to purchasers who are "certificated or licensed carrier[s]."

▋ In construing a statute, regardless of whether the statute is facially ambiguous, we may consider the administrative construc-tion of the statute. Code Construction Act, Tex.Gov't Code Ann. § 311.023(6) (West 1988); *Southwest Airlines Co. v. Bullock,* 784 S.W.2d 563, 568 (Tex.App.—Austin 1990, no writ). This Court may give weight to the construction placed upon it by the agency charged with its administration as long as the construction is reasonable and does not contradict the plain language of the statute. *Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex.1993); *see also* Tex.Tax Code Ann. § 111.002(a) (West 1992) ("The comptroller may adopt rules that do not conflict with the laws of this state. . . .").

Both Taxpayers and the Comptroller refer us to *Southwest Airlines,* 784 S.W.2d at 568–69, in which we examined the Comptroller's pre–1985 definition of "licensed and certificated carrier" and its congruity with former Tax Code section 151.330(c), which exempted use tax on "[t]he use of tangible personal property . . . moved into this state for use as a licensed and certificated carrier of persons or property." *See* Act of May 31, 1981, 67th Leg., R.S., ch. 389, § 1, 1981 Tex.Gen.Laws 1490, 1568 (Tex.Tax Code Ann. § 151.330(c), since repealed). Arguing that the "licensed and certificated carrier" language of section 151.330(c) did not refer to an aircraft but instead to a business entity using an aircraft, Southwest Airlines asserted section 151.330(c) exempted from use tax "not only aircraft and other vehicles used by a carrier [a business entity] to transport persons and property, but also . . . all personal property used by a certificated carrier in its business of transporting persons and property." *Southwest Airlines,* 784 S.W.2d at 568. We disagreed, noting that contrary to Southwest Airlines's argument, section 151.330(c) made no reference to the *entity* using property subject to the use tax exemption. *See id.* (noting statute did not refer to property used "by" a licensed and certificated carrier). Instead, we concluded that the statute designated a *category* of personal property ex-

---

**3.** In 1961, the statute read: "There are exempted from the taxes imposed by this Chapter the receipts from the sale, use, storage, lease or other consumption of aircraft sold to persons using such aircraft as *certificated or licensed carriers* of persons or property, . . . ." *See* Act of Aug. 8, 1961, 57th Leg., 1st C.S., ch. 24, § 1, 1961 Tex.Gen.Laws 71, 86 (Tex.Tax Code Ann. § 151.328(a)(1), since amended) (emphasis added).

**4.** Summary judgment evidence established that the FAA certifies people, not aircraft, as carriers.

empt from use tax. *See id.* We held that this category of personal property, as evidenced by legislative intent, included only aircraft, not any other personal property. *See id.* at 568–69. In support of our conclusion regarding the legislative intent of section 151.330(c), we cited Tax Code section 151.328(a)(1). *Id.*

Our reference to section 151.328(a)(1) in *Southwest Airlines* to clarify the legislature's intent of former section 151.330(c) does not assist us in the resolution of the instant cause. Our reading of both section 151.328(a)(1) and former section 151.330(c) in *Southwest Airlines* was influenced by the pre–1985 Comptroller rule defining "licensed and certificated carrier," which is no longer in effect today. *See id.* at 568. Moreover, in contrast to the parties in *Southwest Airlines* who disputed the type of property exempt from taxes under former section 151.330(c), the parties in the instant cause do not dispute the type of property exempt from tax under section 151.328(a)(1). Entitled "Aircraft," section 151.328(a)(1) clearly exempts aircraft sales from tax. *See* Tex.Tax Code Ann. § 151.328(a)(1). Instead, the parties in this cause disagree about which sales of aircraft section 151.328(a)(1) exempts. The Comptroller argues that tax-exempt aircraft sales are only those sales to persons or entities licensed by the FAA to fly aircraft for common carrier purposes. Taxpayers argue tax-exempt aircraft sales include those sales intended by the purchaser to result in either the use or operation of the aircraft for common carrier purposes.

In support of their argument, Taxpayers argue that if the legislature had intended the Comptroller's post–1985 definition of "licensed and certificated carrier," it would have worded the statute to read, "if sold to a certificated or licensed carrier of persons or property." Moreover, Taxpayers assert that *it makes no sense* to insert the Comptroller's definition into the statute to read, "if sold to a person using the aircraft as a person authorized [by the FAA]"; they argue that while an aircraft can be used as a common carrier, it cannot be used as a person. Nevertheless, other possible wording of a statute does not bear on our construction; rather, we focus on the words actually used, even if ambiguous. The legislature is presumed to have chosen statutory language carefully, intentionally using every word for a meaning and purpose. *Jessen Assocs., Inc. v. Bullock,* 531 S.W.2d 593, 600 (Tex.1975); *Tandy Corp. v. Sharp,* 872 S.W.2d 814, 818 (Tex.App.—Austin 1994, writ denied). We reiterate that the Code Construction Act directs us to consider the statute's administrative construction without regard to the statute's ambiguity. Code Construction Act, Tex.Gov't Code Ann. § 311.023(6).

Taxpayers additionally assert that other provisions of Tax Code section 151.328(a) demonstrate that the legislature intended the phrase "licensed and certificated carrier" to designate the intended use and operation of the aircraft. *See, e.g.,* Tex.Tax Code Ann. § 151.328(a)(2) (West Supp.1995) (exempting sales of aircraft *used* for training pilots); *id.* § 151.328(b), (e) (West 1992) (providing tax exemptions to repairs to or parts of aircraft owned *or* operated by certificated or licensed common carriers). Taxpayers also argue that the Comptroller's agency rules demonstrate that the phrase "certificated or licensed carrier" applies to the use and operation of an aircraft. *See, e.g.,* 34 Tex.Admin.Code § 3.297(d) (1995) (stating sales or use tax not due on aircraft *used* by persons defined as licensed and certificated carriers); *id.* § 3.297(d)(1) (explaining that items purchased by owner *or* operator of aircraft for repair of aircraft or its component parts are exempt from taxation); *id.* § 3.297(d)(2) (exempting component parts affixed to an aircraft "used as a licensed and certificated carrier device" from taxation). *See also* Tex. Tax Code Ann. § 151.330(i) (West Supp.1995) (referring to "vehicle" used as "a licensed and certificated common carrier of persons or property").

Despite Taxpayers' assertions, sales tax exemption provisions relating to aircraft sales do not always provide exemptions based on aircraft use. *See, e.g.,* Tex.Tax Code Ann. § 151.328(a)(3) (West Supp.1995) (focusing on purchaser's identity); *id.* § 151.328(a)(4) (focusing on geographical location of aircraft's first use). Furthermore, the same language of section 151.328 that

Taxpayers cite as examples of the statute's emphasis on the use of the aircraft by either the owner or operator also comports with the Comptroller's post–1985 definition of "licensed and certificated carrier" as a person. *See* Tex.Tax Code Ann. § 151.328(b), (d), (e) (West 1992) (referring to aircraft or aircraft equipment operated, owned, or used *by* certificated or licensed carriers); *see also* 34 Tex.Admin.Code § 3.297(d) (1995) (implementing taxation classifications of Tax Code § 151.328(b), (d), (e) including exemption for tangible personal property permanently affixed as component part of aircraft "used as a licensed and certificated carrier *device* of persons and property") (emphasis added). Finally, Taxpayers argue that a sales tax scheme which taxes an aircraft sale to a purchaser planning to use the aircraft for common carrier purposes but does not tax the sales of component parts affixed to that aircraft is "illogical, inconsistent and unreasonable." Nevertheless, we note that the legislature has broad powers to determine taxation classifications and that courts will interfere only when there is a clear showing that a tax classification has no reasonable basis. *American Transfer & Storage Co. v. Bullock*, 525 S.W.2d 918, 924 (Tex.Civ.App.— Austin 1975, writ ref'd); *Hurt v. Cooper*, 130 Tex. 433, 110 S.W.2d 896, 900–01 (1937). Taxpayers have not presented summary judgment evidence or argument clearly showing that the tax classification has no reasonable basis.[5]

Section 151.328(a)(1) can be reasonably read as if the phrase "certificated or licensed carrier" refers to the person purchasing the aircraft or the aircraft itself. We conclude that the Comptroller's post–1985 definition of "licensed and certificated carrier" is not inconsistent with section 151.238(a)(1) of the Tax Code. When the Comptroller's interpretation of the scope of a tax exemption statute is reasonable, in that it harmonizes with the statute, then this Court is bound to accept that interpretation regardless of the existence of other reasonable interpretations. *Hammerman & Gainer, Inc. v. Bullock*, 791 S.W.2d 330, 333 (Tex.App.— Austin 1990, no writ); *see also Bullock v. Hewlett–Packard Co.*, 628 S.W.2d 754, 756 (Tex.1982) (stating courts must uphold legitimate administrative rules even if, in court's opinion, rules are not wise, desirable, or necessary). When the proper administrative officer construes a statute in a new way, and the legislature subsequently reenacts that statute without substantial change, we will give that statute the agency's same construction. *See Humble Oil & Ref. Co. v. Calvert*, 414 S.W.2d 172, 180 (Tex.1967); *Reed v. Texas Dep't of Licensing & Regulation*, 820 S.W.2d 1, 3 n. 2, 4 (Tex.App.—Austin 1991, no writ) (holding court entitled to assume legislature, by failing to amend statute, approves of agency's statutory interpretation).

We therefore adopt the Comptroller's administrative construction of section 151.328(a)(1) to provide sales tax exemptions on aircraft sales only when the purchaser of the aircraft is a "licensed and certificated carrier" as defined by the Comptroller. Quorum did not sell an aircraft to a purchaser who was a "licensed and certificated carrier." Instead, at the time of the aircraft sale, the firm, as purchaser, allegedly planned to use the aircraft for charter purposes; sometime after the sale, the firm entered into an agreement whereby a licensed or certificated carrier, AMR Combs, agreed to operate the aircraft. Quorum's aircraft sale to the firm was not tax-exempt.

When, as in the instant cause, the trial court's order does not specify the basis or theory upon which the motion is granted, the summary judgment must be affirmed on *any* meritorious theory of recovery presented in the motion. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex.1989). We have concluded as a matter of law that Quorum's aircraft sale to the firm was not exempt from

---

5. Citing the Comptroller's decision in Hearing No. 11,161 (1981), Taxpayers additionally argue that the apparent intent of § 151.328(a)(1) was to afford tax-favored treatment to those persons placing an aircraft at the public's disposal. However, Taxpayers' cited authority does not establish legislative intent; the taxpayers at that hearing "did not present much, if any, evidence bearing on legislative intent." Tex.Comp.Pub. Acc'ts, Hearing No. 11,161 (August 7, 1981), 1981 WL 12462, at 4. The administrative judge only assumed the legislative intent asserted by the taxpayers for purposes of discussion. *Id.*

sales tax under section 151.328(a)(1). Accordingly, the trial court correctly granted the Comptroller's motion for summary judgment and denied Taxpayers' motion.

## CONCLUSION

We overrule both of Taxpayers' points of error and affirm the judgment of the trial court.

Affirmed.