Chevron 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00628-CV







 John Sharp, Comptroller of Public Accounts; Martha Whitehead, Treasurer of Texas;


and Dan Morales, Attorney General of Texas, Appellants




v.




Chevron Chemical Company, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 93-06300, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING








 Appellee Chevron Chemical Company ("Chevron") filed suit against appellants (1)
(collectively the "Comptroller") in district court seeking a refund of sales tax. See Tex. Tax Code
Ann. §§ 151.001-.801 (West 1992 & Supp. 1996) (hereinafter the "Code"). (2) The disputed tax
concerned Chevron's purchase of piping installed in the Polyethylene Manufacturing Unit at its
Cedar Bayou chemical plant located outside of Baytown. The district court rendered judgment
ordering the Comptroller to issue a $257,362.86 refund to Chevron. The Comptroller appeals. 
We will affirm the judgment of the district court.



THE CONTROVERSY


 Chevron is a major petrochemical company that manufactures polyethylene, a
substance used in making various plastic products. In 1990, Chevron purchased extensive piping
for use in the polyethylene manufacturing process at its Cedar Bayou plant. Chevron requested
a refund from the Comptroller of the sales tax paid on its purchase of the piping. Chevron argued
that the piping was exempt from sales tax because it is used in "actual manufacturing" operations. 
See Code § 151.318(g). The Comptroller denied the request for a refund on the basis that the
piping was used as "intraplant transportation equipment," which is not eligible for the "actual
manufacturing" exemption. Code § 151.318(c)(2). Chevron filed suit for a refund under Code
section 112.151. The district court rendered judgment for Chevron and the Comptroller appeals.

 The record shows that the piping in question is an integral part of a sealed,
synchronized, interconnected manufacturing process that continuously produces polyethylene
pellets. The Polyethylene Unit at the Cedar Bayou plant contains a variety of piping, different
in size, length, and function. The piping contains and funnels unreacted materials, removes heat
from the reactor, recaptures and recycles gases, lubricates machinery, allows for insertion of
various substances needed in the manufacturing process, prevents dangerous, wasteful or polluting
conditions from forming, and performs other functions which are necessary and essential to the
manufacturing of polyethylene.

 The Code exempts certain manufacturing equipment from sales tax:


(g) Each person engaged in manufacturing, processing, fabricating, or repairing
tangible personal property for ultimate sale is entitled to a refund or a
reduction in the amount of tax imposed by this chapter as provided by
Subsection (h) for the purchase of machinery, equipment, and replacement
parts or accessories with a useful life in excess of six months if the equipment
is used or consumed in or during the actual manufacturing, processing,
fabrication, or repair of tangible personal property for ultimate sale, and the
use or consumption of the property is necessary or essential to the
manufacturing, processing, fabrication, or repair operation, or to a pollution
control process.



Code § 151.318(g) (emphasis added).

 The Comptroller concedes that the piping in question meets the requirements of the
"actual manufacturing" exemption contained in section 151.318(g). The Comptroller, however,
argues that the piping is excluded from the exemption under Code section 151.318(c) because it
is used for intraplant transportation. Section 151.318(c)(2) provides:



(c) The exemption does not include: 


. . .


 (2) intraplant transportation equipment, maintenance or janitorial supplies
or equipment, or other machinery, equipment, materials, or supplies
that are used incidentally in a manufacturing, processing, or fabrication
operation.



Code § 151.318(c)(2) (emphasis added). Chevron responds that the piping is an integral
component part of the machinery at the plant, all of which provides a unified, sealed environment
that makes the formation of polyethylene pellets possible. We are asked to decide a narrow
question: must the piping used in Chevron's manufacture of polyethylene be characterized as
equipment dedicated to "intraplant transportation?"



DISCUSSION


Jurisdictional Question

 In its first point of error, the Comptroller contends that the district court erred by
considering a claim that was jurisdictionally barred because it was not alleged as a ground of error
in Chevron's motion for rehearing challenging the agency's decision. See Code § 111.105(d). 
We find this argument to be without merit.

 The Comptroller argues that the district court granted Chevron a refund on the
basis that the piping was exempt from taxation as part of a pollution control system and contends
that this specific ground of error was not raised in Chevron's motion for rehearing. The Code
requires that Chevron prove that use of the piping is necessary or essential to the "manufacturing,
processing, fabrication, or repair operation, or to a pollution control process." Code
§ 151.318(g) (emphasis added). Clearly, proving that the piping is necessary and essential to a
pollution control operation is only one of several ways to qualify for the exemption. The record
shows that Chevron properly raised a specific ground of error in its motion for rehearing arguing
that the piping is necessary or essential to the "manufacturing process." Chevron was not also
required to argue that the piping was necessary and essential to a "pollution control process." 
Furthermore, while the pollution control function of the piping may not have been specifically
referred to as a "pollution control process," it is addressed generally in Chevron's motion for
rehearing:



The piping is a component part of Claimant's processing system that is vital not
only to the actual functioning of the system but also to the very existence of the
product: without the piping, Claimant's processing system could not function, and
any attempt to make it function would result in the loss of all the raw materials in
the manufacturing operation and the contamination of both the product and the
environment.



(emphasis added). We overrule the Comptroller's first point of error.



The Exemption 

 In its second point of error, the Comptroller contends that the district court
improperly interpreted the exclusion in Code section 151.318(c)(2) by finding that the piping at
issue was not used as intraplant transportation equipment. As a threshold matter, we address the
burden of proof. We have recently considered the exemption in Code section 151.318(g). See
Sharp v. Tyler Pipe Indus., Inc., 919 S.W.2d 157, 161 (Tex. App.--Austin 1996, no writ h.). In
Tyler Pipe, the taxpayer argued that its sand molds were used in the manufacture of pipe and
therefore qualified for the exemption. The Comptroller disagreed, arguing that the sand molds
were not used in actual manufacturing. Id. at 159. The Comptroller relied on well-settled Texas
law requiring strict construction of tax exemptions and placing the burden on the taxpayer to show
that it falls within the exemption. North Alamo Water Supply Corp. v. Willacy County Appraisal
Dist., 804 S.W.2d 894, 899 (Tex. 1991); Quorum Sales, Inc. v. Sharp, 910 S.W.2d 59, 61 (Tex.
App.--Austin 1995, writ denied). We acknowledged that exemptions must be strictly, but
reasonably, construed against the taxpayer. Tyler Pipe, 919 S.W.2d at 161. However, we held
that the taxpayer had carried its burden to show that the sand molds were used in actual
manufacturing. Id. at 163.

 In this appeal, we must go one step beyond Tyler Pipe. The Comptroller here
concedes that Chevron's piping meets the requirements of the "actual manufacturing" exemption
contained in section 151.318(g) but nevertheless argues that the piping is excluded from the
exemption as "intraplant transportation equipment." As in Tyler Pipe, the Comptroller argues that
the burden of proof is entirely on the taxpayer to show that it qualifies for any tax exemption
sought. Chevron responds that this appeal is not governed by the rule of strict construction for
exemptions because the Comptroller concedes here that the piping is necessary to actual
manufacturing. Chevron reasons that the burden shifts to the Comptroller to prove that the piping
is excluded from the exemption as intraplant transportation equipment under Code section
151.318(c)(2). We agree with Chevron.

 Therefore, we consider whether the Comptroller has demonstrated that the piping
is used as "intraplant transportation equipment." The statute does not define the term. The
district court, however, made an unchallenged finding of fact that the Comptroller itself defines
intraplant transportation equipment as any item that has no other purpose than use for intraplant
transportation. Therefore, under the Comptroller's own definition, an item constitutes intraplant
transportation equipment only if its sole purpose is for intraplant transportation. Because the
Comptroller's definition is reasonable, we accept it. See Tarrant Appraisal Dist. v. Moore, 845
S.W.2d 820, 823 (Tex. 1993).

 Chevron offered evidence showing that the piping in question is used in many
different steps within the manufacturing process, including, but not limited to, containing and
funneling unreacted materials, removing heat from the reactor, recapturing and recycling gases,
lubricating machinery, allowing for insertion of various substances needed in the manufacturing
process, preventing dangerous, wasteful, or polluting conditions from forming, as well as
performing other functions which are necessary and essential to the manufacturing of
polyethylene. This undisputed expert testimony clearly demonstrates that intraplant transportation
is not the sole purpose of the piping.

 The Comptroller analogizes the piping to a conveyor belt, which he has historically
excluded from the exemption. The Comptroller reasons that the piping, like a conveyor belt,
merely carries items from one place in a plant to another. We find the analogy unpersuasive. The
record shows that the piping is part of a self-contained, unified manufacturing process, and is not
merely a means for transporting material from one part of the plant to another. The piping does
not just carry material from stage to stage within the manufacturing process, but rather forms one
part of a large, integrated plant that is best characterized as a single "machine." We therefore
hold that the district court did not err in determining that the piping was not "intraplant
transportation equipment," and we overrule the Comptroller's second point of error.



CONCLUSION


 Because Chevron's piping is not used solely for intraplant transportation, it is not
excluded from the sales-tax exemption in Code section 151.318(g). We therefore affirm the
judgment of the district court granting Chevron a sales-tax refund.



 Mack Kidd, Justice

Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed

Filed: June 12, 1996

Publish
1.   Appellants are John Sharp, Comptroller of Public Accounts; Martha Whitehead,
Treasurer of Texas; and Dan Morales, Attorney General of Texas.
2.   The dispute in this appeal concerns the 1990 tax year and is governed by the version
of the Tax Code in effect at that time. Since the provisions of the Tax Code at issue have not
changed, we cite the current code for convenience.