TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00563-CV







Carole Keeton Rylander, Comptroller of Public Accounts of the State of Texas;

and John Cornyn, Attorney General of the State of Texas, Appellants


v.



B&A Marketing Company, by and through its Successor-in-Interest,

Atlantic Richfield Company, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 97-01522, HONORABLE PETER M. LOWRY, JUDGE PRESIDING



 




 Appellee B&A Marketing Company, by and through its successor-in-interest
Atlantic Richfield Company ("B&A"), sued the Texas Comptroller of Public Accounts and the
Texas Attorney General (collectively, "the Comptroller"), (1) for a refund of "additional tax" paid
under protest. Both parties moved for summary judgment; the trial court granted B&A's motion
in all respects and denied the Comptroller's motion in all respects. The Comptroller now appeals
the trial court judgment. We will reverse the trial court judgment and render judgment in favor
of the Comptroller. 


STATUTORY AND PROCEDURAL BACKGROUND

 Texas imposes a franchise tax on corporations for the privilege of doing business
in Texas. See Tex. Tax Code Ann. §§ 171.001-.687 (West 1992 & Supp. 1999) ("Franchise Tax
Act"); Bullock v. National Bancshares Corp., 584 S.W.2d 268, 270 (Tex. 1979); General
Dynamics Corp. v. Sharp, 919 S.W.2d 861, 863 (Tex. App.--Austin 1996, writ denied). The
franchise tax is imposed annually on each corporation that is incorporated in Texas or that
conducts business in Texas. See Tex. Tax Code Ann. § 171.001. The franchise tax is imposed
on a prospective basis: a corporation pays the tax on May 15 of each year for the privilege of
doing business in Texas that year (the "report year"), and the tax is based on the "business done
by the corporation" during its previous fiscal year. See id. §§ 171.151-.153; .1532. The
franchise tax is calculated by multiplying the franchise tax base by the franchise tax rate. See id.
§ 171.002.

 Before 1992, the franchise tax base consisted solely of a corporation's "taxable
capital." (2) In 1991, the legislature amended the Franchise Tax Act to add "earned surplus" (3) as an
additional tax base from which to calculate the franchise tax. (4) It is important to note, however,
that not all corporations are subject to both the taxable capital and earned surplus components of
the franchise tax. Federal law prohibits states from imposing any kind of income tax on a
corporation whose only contacts with a state are solicitation of sales of tangible personal property,
such as a mail order company. See 15 U.S.C.A. §§ 381-384 (1997) (hereafter "P.L. 86-272"). (5) 
P.L. 86-272 applies only to the earned surplus component of the franchise tax because earned
surplus is measured by net income. Therefore, a corporation whose activities fall within the
protection of P.L. 86-272 may only be subject to franchise tax based on taxable capital. 

 The 1991 Franchise Tax Act amendments that added the "earned surplus"
component to the franchise tax also added the "additional tax" statute that is at issue in this case. 
See Act of August 12, 1991, 72d Leg., 1st C.S., ch. 5, § 8.02, 1991 Tex. Gen. Laws 134, 152
(codified at Tex. Tax Code Ann. § 171.0011 (West 1992), since amended). (6) The additional tax
statute was amended the following legislative session; however, in this case we are called upon
to construe the version in effect January 1, 1992 through December 31, 1993. That version
provided in relevant part:


§ 171.0011. Additional Tax


(a) An additional tax is imposed on a corporation that is subject to the tax imposed
under Section 171.001 and that is no longer subject to the taxing jurisdiction of this
state in relation to the tax on net taxable earned surplus. 



Tex. Tax Code Ann. § 171.0011(a) (West 1992).

 The dispute in this case arose when the Comptroller assessed an additional tax
against B&A's earned surplus from January 1, 1992, through the date of B&A's dissolution,
December 18, 1992. Before dissolving and during the years B&A did business in Texas, it owned
and operated a pipeline and engaged in purchases and sales of natural gas. For the privilege of
doing business in Texas during calendar year 1992, B&A paid the franchise tax based on its
financial data from fiscal year 1991. If B&A had exercised its privilege to do business in Texas
during calendar year 1993, it would have been required to pay franchise tax based on its financial
data from fiscal year 1992. However, because B&A did not do business in Texas after it dissolved
in December 1992, B&A owed no franchise tax for the privilege of doing business in Texas in
1993. Therefore, B&A paid no franchise tax on the $75,091,779 in gross receipts it received and
the $30,882,272 earned surplus calculated for the period from January 1, 1992 through December
18, 1992. The Comptroller, based on her interpretation of section 171.0011, assessed an
"additional tax" liability of $1,389,702.24 for these eleven and one-half months of previously
untaxed earned surplus.

 After exhausting its administrative remedies, B&A paid the asserted deficiency plus
penalties and interest, $2,125,372.21, and then filed this suit for a refund of the entire amount. 
See Tex. Tax Code Ann. §§ 111.101-.110; 112.001-.052 (West 1992 & Supp. 1999). In its
petition and its motion for summary judgment, B&A argued that the additional tax in the 1992
version of section 171.0011 applied only to a corporation that limits its activities in Texas to sales
protected by P.L. 86-272; it did not apply to a dissolved corporation. It argued in the alternative
that if section 171.0011 did apply to a dissolved corporation, then the statute was unconstitutional. 
The trial court granted B&A's motion for summary judgment and denied the Comptroller's motion
for summary judgment. The Comptroller now appeals to this Court to reverse the trial court
judgment and render judgment for the Comptroller. 


DISCUSSION

 The facts in this case are not in dispute. The resolution of this cause turns on
questions of law; therefore, we review de novo the trial court judgment granting B&A summary
judgment. See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548-49 (Tex. 1985). The trial court did not specify
on which of B&A's two grounds it based its judgment; therefore, we must review both grounds
to determine if either supports summary judgment. See Star-Telegram, Inc. v. Doe, 915 S.W.2d
471, 473 (Tex. 1995).

 In her first issue, the Comptroller argues that the 1992 additional tax statute applies
to a corporation that dissolves; therefore, the trial court erred by rendering judgment for B&A. 
To interpret the additional tax statute, we must keep in mind several rules of statutory
construction. First, we must ascertain the legislature's intent in enacting the statute. Texas Utils.
Elec. Co. v. Sharp, 962 S.W.2d 723, 726 (Tex. App.--Austin 1998, pet. denied). In determining
the meaning of a statute, a reviewing court must consider the entire act, its nature and object, and
the consequences that would follow from each construction. See Sharp v. House of Lloyd, 815
S.W.2d 245, 249 (Tex. 1991). If we doubt the applicability of the tax to the taxpayer, the statute
must be strictly construed against the taxing authority and liberally construed in favor of the
taxpayer. See Bullock v. Statistical Tabulating Corp., 549 S.W.2d. 166, 169 (Tex. 1977); Texas
Utils. Elec. Co., 962 S.W.2d at 726 n.1; Calvert v. Humble Oil & Refining Co., 381 S.W.2d 229,
232 (Tex. Civ. App.--Austin 1964, writ ref'd n.r.e.). Once we have determined the tax is
applicable to the taxpayer, we should liberally construe the statute to effectuate its purpose of
raising revenue. See Texas Utils. Elec. Co., 962 S.W.2d at 726 (statutes enacted purely for
revenue purposes should be liberally construed). Finally, "[c]onstruction of a statute by the
administrative agency charged with its enforcement is entitled to serious consideration, so long
as the interpretation is reasonable and does not contradict the plain language of the statute." 
Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993); see also Quorum Sales, Inc.
v. Sharp, 910 S.W.2d 59, 62 (Tex. App.--Austin 1995, writ denied) (citing Code Construction
Act, Tex. Gov't Code Ann. § 311.023(6) (West 1988)). 

 Before we review the Comptroller's construction of the additional tax statute, we
must detail B&A's position regarding the statute's plain meaning. B&A argues that the following
two clauses of the additional tax statute must be met at the same time in order for the additional
tax to apply: "[a]n additional tax is imposed on a corporation that is subject to the tax imposed
under Section 171.001 [the franchise tax] and that is no longer subject to the taxing jurisdiction
of this state in relation to the tax on net taxable earned surplus." Tex. Tax Code Ann.
§ 171.0011(a) (emphasis added). B&A contends that the plain wording of the statute applies the
additional tax to a corporation that continues to be subject to the franchise tax after it changes its 
structure so that it is no longer subject to the earned surplus component of the franchise tax. This
would limit the statute's application only to P.L. 86-272 corporations, because, as we explained
above, corporations coming under the protection of P.L. 86-272 may be taxed only on the taxable
capital component of the franchise tax.

 The Comptroller contends that section 171.0011 was added to the Franchise Tax
Act to close a loophole in which profits earned in Texas escaped taxation, either by a corporation
ceasing to do business in Texas or by continuing to do business in Texas after reorganizing. 
Either way, a corporation could earn profits in its last year of doing business in Texas and pay no
tax on those profits, because the franchise tax requires corporations to pay for the privilege of
doing business during the current year based on profits from the year before. B&A provides a
good example. It paid its franchise tax as required in 1992 for the privilege of doing business in
Texas in 1992. This tax was based on its profits in 1991. Because it did not do business in Texas
at all in 1993, it owed no franchise tax. Therefore, the thirty million dollar profit earned by B&A
in 1992 would not be taxed were it not for the additional tax statute.

 Even if applying the 1992 additional tax statute to corporations like B&A may be
good policy for the state, the question we must resolve in this case is whether the statute actually
provides for such taxation. The Comptroller argues that the language of the statute supports her
interpretation. The first criterion of the statute, that the corporation "is subject to the tax imposed
under Section 171.001," simply identifies the types of entities subject to the additional tax--those
that are subject to the franchise tax. The second criterion, "and that is no longer subject to the
taxing jurisdiction of this state in relation to the tax on net taxable earned surplus," identifies an
event that subjects those entities to the additional tax. A corporation triggers the event, thus
becoming "no longer subject to the taxing jurisdiction of the state in relation to the tax on net
taxable earned surplus," when it dissolves, merges out of existence, withdraws, or when it changes
its business activities to fall within the protection of P.L. 86-272. 

 The Comptroller's promulgated rule concerning the additional tax statute set forth
in the Texas Administrative Code is consistent with the Comptroller's argument:


§ 3.567. Additional Tax on Earned Surplus


 (a) Effective date. The additional tax imposed by the Tax Code, § 171.0011,
applies to a corporation which, after December 31, 1991, no longer has sufficient
nexus with Texas to be subject to a tax based on earned surplus. . . . 


 (b) Due date. . . . As long as the proper amount is paid and an amended
return, if needed, is filed within 60 days after the corporation dissolves, merges,
or withdraws, then no penalty or interest will be assessed. 



34 Tex. Admin. Code § 3.567 (1996) (emphasis added). This provision took effect July 29, 1992,
approximately five months before B&A dissolved. 

 The Comptroller argues that her determination that B&A is subject to the additional
tax is a reasonable construction of the statute because: (1) B&A was subject to the franchise tax,
thus fulfilling the first criterion; and (2) when B&A dissolved, it was no longer subject to the
taxing jurisdiction of the state in relation to the tax on net taxable earned surplus. The
Comptroller challenges B&A's contention that the statutory language requires a corporation to
meet both criteria at the same time, thus limiting the statute's application to P.L. 86-272
corporations, by pointing out that the statutory language does not require a corporation to remain
subject to the taxable capital component of the franchise tax in order for the additional tax to
apply. The Comptroller's construction thus includes P.L. 86-272 corporations, which remain
subject to the taxable capital component of the franchise tax, as well as corporations that are no
longer subject to either component of the franchise tax by reason of withdrawal, merger, or
dissolution.

 To summarize the parties' respective positions, both B&A and the Comptroller
construe the second clause of subsection (a) to require an event to occur in order to trigger
application of the additional tax. B&A argues that the only triggering event is a corporation's
change in activities to come within P.L. 86-272, because both clauses are in the present tense and
are joined by the conjunction "and." B&A argues alternatively that even if both requirements do
not have to be met at the same time, the present tense language of the first clause requires that the
corporation continue to exist after it becomes no longer subject to the tax on net taxable earned
surplus. Therefore, the statute may apply to corporations that withdraw from the state and
continue to exist, but it does not apply to corporations that dissolve or merge out of existence. 

 The Comptroller construes the first clause, requiring that a corporation "is subject
to the tax imposed under Section 171.001" to mean that an entity must be subject to the franchise
tax at the time the event occurs that causes the entity to cease to be subject to the tax on net taxable
earned surplus, but it does not have to continue to be subject to the franchise tax after the event. 
This first clause simply identifies those entities that are subject to the additional tax, thus
excluding, for example, partnerships. The Comptroller argues that a corporation "is no longer
subject to the tax" on net taxable earned surplus when it changes its activities to come within P.L.
86-272, as well as when it withdraws, merges, or dissolves.

 The Comptroller argues that subsection (b) of the additional tax statute, which
explains how to calculate the additional tax, supports its construction of the first clause of
subsection (a). Subsection (b) provides that the period for which the tax is calculated is: "the
period beginning on the day after the last day for which the tax imposed on net taxable earned
surplus was computed under Section 171.1532 and ending on the date the corporation is no longer
subject to the taxing jurisdiction of this state in relation to the tax on net taxable earned surplus." 
Tex. Tax Code Ann. § 171.0011(b). This section reveals the legislature's intent to tax earned
surplus from the day after a corporation's franchise tax was last calculated through the day the
corporation's earned surplus can no longer be taxed. Neither subsection demonstrates an intent
for the additional tax to apply only to those corporations that change their business activities to
come within the protection of P.L. 86-272. In fact, the structure of subsection (a) leads us to
believe that the legislature intended the statute to include any number of events that may cause an
entity to become no longer subject to the tax on earned surplus. If the legislature intended the
statute to apply to only one situation, it could have stated that situation in the statute, rather than
providing a two-part test to evaluate whether the entity will be subject to the additional tax. 

 The Comptroller's construction of the statute is reasonable and does not contradict
the plain meaning of the statute; she has enumerated several events that would result in the state
losing taxing jurisdiction over a corporation's earned surplus, including dissolution. When a
corporation that is subject to the franchise tax dissolves, regardless of whether it last paid its
franchise tax based on taxable capital or earned surplus, it is no longer subject to be taxed on its
earned surplus. While B&A has provided us an alternative interpretation of the statute, we give
deference to the agency's construction of a statute it is charged with enforcing when that
construction is reasonable and does not contradict the plain meaning of the statute. See Tarrant
Appraisal Dist., 845 S.W.2d at 823. The Comptroller's first issue is sustained. 

 The Comptroller next challenges B&A's contention that as applied to B&A the
additional tax statute is unconstitutional. In its motion for summary judgment, B&A challenged
the statute on the grounds that it had no rational, legitimate basis and thus violated B&A's rights
of equal protection, equal and uniform taxation, due process, and due course of law. See U.S.
Const. amend. V, XIV; Tex. Const. art. VIII, § 1; art. I, §§ 3, 19. B&A also contended that the
statute imposed an undue burden on interstate commerce, thus violating the Commerce Clause. 
See U.S. Const. art. I, § 8. 

 To determine the constitutionality of a statute, we begin with the presumption that
it is constitutional. See Enron Corp. v. Spring Indep. Sch. Dist., 922 S.W.2d 931, 934 (Tex.
1996); Vinson v. Burgess, 773 S.W.2d 263, 266 (Tex. 1989). The party challenging the
constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet
constitutional requirements. See Enron Corp., 922 S.W.2d at 934. Tax legislation deserves
"special consideration." See Vinson, 773 S.W.2d at 266; see also Regan v. Taxation With
Representation, 461 U.S. 540, 547 (1983).

 Both the United States Constitution and the Texas Constitution require equal
protection of the law. See U.S. Const. amend XIV, § 1; Tex. Const. art. I, § 3. Because a
fundamental right is not at issue in this case, the additional tax statute must only be rationally
related to a legitimate state purpose to withstand B&A's equal protection challenge. See City of
New Orleans v. Dukes, 427 U.S. 297, 303 (1976); Barshop v. Medina County Underground Water
Conservation Dist., 925 S.W.2d 618, 631 (Tex. 1996). The Texas Constitution's mandate that
all taxes be equal and uniform requires that all persons falling within the same class be taxed alike. 
See Sharp v. Caterpillar, Inc., 932 S.W.2d 230, 240 (Tex. App.--Austin 1996, writ denied). A
tax classification will be upheld unless it has no rational basis. See id. Finally, under federal and
state guarantees of substantive due process, legislation that does not affect a fundamental right or
interest is valid if it bears a rational relationship to a legitimate state interest. (7) See Williamson v.
Lee Optical Co., 348 U.S. 483, 491 (1955); Texas Workers' Compensation Comm'n v. Garcia,
893 S.W.2d 504, 525 (Tex. 1995). 

 B&A has not carried its burden in this case to rebut the presumption of
constitutionality by showing that the statute is not rationally related to a legitimate state interest,
that the statute's tax classification has no rational basis, or that the tax is not applied equally and
uniformly within the class to be taxed. First, the additional tax does not constitute double
taxation. The additional tax is a tax on profits earned in Texas but not subject to the state's
franchise tax. Although the tax is essentially an income tax, it is not improper that the statute is
included in the Franchise Tax Act, because the additional tax will apply only to those entities
already subject to the franchise tax. 

 B&A argues that there is no rational basis for imposing an income tax solely on
corporations that cease to do business in Texas in any given year. We note first that the tax on
income is imposed not only on corporations that cease to do business in Texas, but also on those
that continue to do business in Texas after changing operations to come within the protection of
P.L. 86-272. Corporations that continue to be subject to the earned surplus component of the
franchise tax will be taxed through the mechanics of the franchise tax. Thus, the tax classification
identified in the additional tax statute is neither unreasonable nor irrational, because it seeks to tax
a share of business income earned in this state that would otherwise escape taxation. It applies
even-handedly to all entities subject to the franchise tax that change their business or cease to do
business in Texas "because the amount of the tax is always based upon the period of previously
untaxed earned surplus." Rylander v. 3 Bealls Brothers 3, Inc., No. 03-98-00533-CV, slip op.
at 14 (Tex. App.--Austin July 15, 1999, no pet. h.). Furthermore, the additional tax statute is
rationally related to the state's legitimate interest in raising revenue because it taxes income earned
by the corporation in the state. We cannot say that the legislature's decision to assess an additional
tax on profits that would otherwise leave the state untaxed was irrational or unreasonable. See id. 
We now turn to B&A's contention that the additional tax violates the Commerce Clause. 

 A state tax does not violate the Commerce Clause if it: (1) is applied to an activity
with a substantial nexus with the taxing state; (2) is fairly apportioned; (3) does not discriminate
against interstate commerce; and (4) is fairly related to the services provided by the state. See
Complete Auto Transit Inc. v. Brady, 430 U.S. 274, 279 (1977); Vinmar, Inc. v. Harris County
Appraisal Dist., 947 S.W.2d 554, 555 (Tex. 1997). 

 B&A contends that the additional tax discriminates against interstate commerce (8)
because it punishes corporations for taking their business out of Texas. B&A's argument focuses
on the different treatment between corporations that do business in Texas versus those that become
no longer subject to the tax on earned surplus. We believe this argument is misplaced. The
commerce clause prohibits states from discriminating against foreign enterprises competing with
local businesses, and from discriminating against commercial activity occurring outside the taxing
state. See Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 197 (1995). So long
as the statute applies in the same manner to Texas and foreign corporations alike, the statute does
not violate the Commerce Clause. See General Dynamics Corp., 919 S.W.2d at 869. The
additional tax statute applies to all corporations evenly, whether local or foreign. Both local and
foreign corporations are subject to the same additional tax calculations; therefore, both local and
foreign corporations pay the same amount of additional tax for the same amount of income earned
in Texas. Because the statute does not favor local corporations over foreign corporations, it does
not violate the Commerce Clause. We sustain the Comptroller's second issue. 


CONCLUSION

 We hold that the additional tax statute applies to B&A and that the statute is not
unconstitutional. Having sustained both of the Comptroller's issues, we reverse the judgment of
the trial court and render judgment in favor of the Comptroller. 



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Reversed and Rendered

Filed: July 15, 1999

Publish
1. B&A sued John Sharp, the Texas Comptroller of Public Accounts, and Dan Morales, the
Texas Attorney General, in their official capacities. Since this appeal was filed, Carole Keeton
Rylander has replaced John Sharp as the Comptroller, and John Cornyn has replaced Dan Morales
as Attorney General. The public officers' successors have been automatically substituted as parties
to this appeal. See Tex. R. App. P. 7.2(a). 
2. A corporation's "taxable capital" consists of stated capital and surplus. See Tex. Tax Code
Ann. § 171.101(a)(1) (West 1992). "Stated capital" is defined by reference to the Texas Business
Corporation Act. See Tex. Bus. Corp. Act. Ann. art. 1.102(24) (West Supp. 1999). The
Franchise Act defines "surplus" as net assets minus stated capital. See Tex. Tax Code Ann.
§ 171.109(a)(1) (West 1992). 
3. "Earned surplus" is essentially adjusted reportable federal net income, or net profit. See
Tex. Tax Code Ann. § 171.109(a)(1); General Dynamics Corp. v. Sharp, 919 S.W.2d 861, 863
(Tex. App.--Austin 1996, writ denied).
4. See Act of August 12, 1991, 72d Leg., 1st C.S., ch. 5, § 8.031(a), 1991 Tex. Gen. Laws
134, 154 (codified at Tex. Tax Code Ann. § 171.002 (West 1992 & Supp. 1999)). 
5. We adopt the parties' nomenclature for the applicable federal statute.
6. All references to the additional tax statute are to the 1992 version unless otherwise noted. 

7. Both the state due course of law clause and the federal due process clause contain a
procedural component and a substantive component. See Barshop v. Medina County Underground
Water Conservation Dist., 925 S.W.2d 618, 632 (Tex. 1995). B&A has not made specific
allegations regarding the statute's violation of due course of law and due process, arguing only that
the statute has no rational, legitimate basis. Accordingly, we assume B&A challenges the
substantive component of both clauses. See id. at 633 (statute found to be rationally related to
legitimate state purpose satisfied substantive component of due course of law clause).
8. In its motion for summary judgment, B&A included in a footnote the argument that the
statute violates the "substantial nexus" requirement. It has not reurged this argument in its
response to the Comptroller's brief. In any event, this argument fails because the tax assessment
was based on activities conducted in the state, before B&A dissolved, while B&A was physically
present in Texas. Therefore, the substantial nexus requirement is satisfied. See Rylander v. 3
Bealls Brothers 3, Inc., No. 03-98-00533-CV, slip op. at 15 (Tex. App.--Austin July 15, 1999,
no pet. h.). 



A's argument focuses
on the different treatment between corporations that do business in Texas versus those that become
no longer subject to the tax on earned surplus. We believe this argument is misplaced. The
commerce clause prohibits states from discriminating against foreign enterprises competing with
local businesses, and from discriminating against commercial activity occurring outside the taxing
state. See Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175, 197 (1995). So long
as the statute applies in the same manner to Texas and foreign corporations alike, the statute does
not violate the Commerce Clause. See General Dynamics Corp., 919 S.W.2d at 869. The
additional tax statute applies to all corporations evenly, whether local or foreign. Both local and
foreign corporations are subject to the same additional tax calculations; therefore, both local and
foreign corporations pay the same amount of additional tax for the same amount of income earned
in Texas. Because the statute does not favor local corporations over foreign corporations, it does
not violate the Commerce Clause. We sustain the Comptroller's second issue. 


CONCLUSION

 We hold that the additional tax statute applies to B&A and that the statute is not
unconstitutional. Having sustained both of the Comptroller's issues, we reverse the judgment of
the trial court and render judgment in favor of the Comptroller. 



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Reversed and Rendered

Filed: July 15, 1999

Publish
1. B&A sued John Sharp, the Texas Comptroller of Public Accounts, and Dan Morales, the
Texas Attorney General, in their official capacities. Since this appeal was filed, Carole Keeton
Rylander has replaced John Sharp as the Comptroller, and John Cornyn has replaced Dan Morales
as Attorney General. The public officers' successors have been automatically substituted as parties
to this appeal. See Tex. R. App. P. 7.2(a). 
2. A corporation's "taxable capital" consists of stated capital and surplus. See Tex. Tax Code
Ann. § 171.101(a)(1) (West 1992). "Stated capital" is defined by reference to the Texas Business
Corporation Act. See Tex. Bus. Corp. Act. Ann. art. 1.102(24) (West Supp. 1999). The
Franchise Act defines "surplus" as net assets minus stated capital. See Tex. Tax Code Ann.
§ 171.109(a)(1) (West 1992). 
3. "Earned surplus" is essentially adjusted reportable federal net income, or net profit. See
Tex. Tax Code Ann. § 171.109(a)(1); General Dynamics Corp. v. Sharp, 919 S.W.2d 861, 863
(Tex. App.--Austin 1996, writ denied).
4. See Act of August 12, 1991, 72d Leg., 1st C.S., ch. 5, § 8.031(a), 1991 Tex. Gen. Laws
134, 154 (codified at Tex. Tax Code Ann. § 171.002 (West 1992 & Supp. 1999)). 
5. We adopt the parties' nomenclature for the applicable federal statute.
6. All references to the additional tax statute are to the 1992 version unless otherwise noted. 

7. Both the state due course of law clause and the federal due process clause contain a
procedural component and a substantive component. See Barshop v. Medina County Underground
Water Conservation Dist., 925 S.W.2d 618, 632 (Tex. 1995). B&A has not made specific
allegations regarding the statute's violation of due course of law and due process, arguing only that
the statute has no rational, legitimate basis. Accordingly, we assume B&A challenges the
substantive component of both clauses. See id. at 633 (statute found to be rationally related to
legitimate state purpose satisfied substantive component of due course of law clause).
8. In its m