TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00146-CV






Texas Utilities Electric Company, Appellant



v.



John Sharp, Comptroller of Public Accounts of the State of Texas; and Dan Morales,
Attorney General of the State of Texas, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT


NO. 93-07563, HONORABLE NORMAN LANFORD, JUDGE PRESIDING






 This is a dispute over franchise taxes the State Comptroller assessed against appellant,
Texas Utilities Electric Company ("TUEC"). TUEC sued for a refund, and the trial court rendered
summary judgment against TUEC. We will modify and affirm the judgment.


BACKGROUND

 TUEC, an electric utility, leases gas combustion turbines in order to generate electricity. 
TUEC entered into certain operating lease agreements in 1987. The agreements obligate TUEC to pay
semi-annual rentals for about twenty-seven years. TUEC does not have an ownership interest in the
turbines; it simply has the right to use them pursuant to the long-term operating lease agreements. 

 In computing its franchise tax obligations for the years 1988, 1989, and 1990, TUEC
sought to deduct the amount of its future rental expense under the operating leases. See generally Tex.
Tax Code Ann. §§ 171.001-.687 (West 1992 & Supp. 1998) ("Tax Code"). TUEC paid its franchise
taxes without deducting the future rentals, but then filed suit for a refund in district court. See id. §
112.151. (1) Both TUEC and the Comptroller moved for summary judgment. In their motions for summary
judgment, the parties disagreed over whether the relevant Tax Code provisions allow TUEC to deduct the
amount of the future rental expense.

 The Comptroller also filed a counterclaim. See Tax Code § 112.1512. In its counterclaim,
the Comptroller argued that in the event TUEC is allowed to deduct the value of the future rentals, it
should be required to offset the deduction by recognizing a gain in assets.

 The district court granted the Comptroller's motion for summary judgment and also
purported to grant its counterclaim. The court denied TUEC's motion and rendered judgment that TUEC
take nothing. TUEC appeals by two points of error. First, TUEC argues that the district court erred by
granting the Comptroller's motion for summary judgment and by denying TUEC's motion. Second, TUEC
argues the district court erred in granting the Comptroller's counterclaim. 

DISCUSSION

 We first address the issue TUEC presents in point of error one: whether the Tax Code
allows TUEC to deduct the value of future rentals under its long-term operating leases for purposes of
calculating its current-year franchise tax obligation.

 Texas corporations and limited liability companies (2) pay franchise tax in part on their "net
taxable capital." See Tax Code §§ 171.001, .002. The determination of "net taxable capital" requires the
application of a sequence of definitions in the Tax Code. For example, "net taxable capital" includes the
corporation's "surplus." Id. § 171.101. "Surplus" includes the corporation's "net assets." Id.
§ 171.109(a)(1). "Net assets" means "the total assets of a corporation minus its total debts." Id. §
171.109(a)(2). In other words, "debts" are deductible from a corporation's taxable surplus under the Tax
Code.

 This case turns on whether TUEC's future rentals under its long-term operating leases are
deductible "debt" under the Tax Code. The Tax Code defines a "debt" as "any legally enforceable
obligation measured in a certain amount of money which must be performed or paid within an ascertainable
period of time or on demand." Id. § 171.109(a)(3). Both parties agree that TUEC's future rentals fall
within this definition. TUEC argues that this fact alone means the future rentals should be deducted from
the "surplus" that ultimately comprises part of its "net taxable capital."

 The Comptroller argues, however, that the rentals are not automatically deductible simply
because they meet the section 171.109(a)(3) definition. The Comptroller asserts that future rentals are not
deductible from "surplus" because of section 171.109(b), which reads:


Except as otherwise provided in this section, a corporation must compute its surplus,
assets, and debts according to generally accepted accounting principles. If generally
accepted accounting principles are unsettled or do not specify an accounting practice for
a particular purpose related to the computation of surplus, assets, or debts, the comptroller
by rule may establish rules to specify the applicable accounting practice for that purpose.


Tax Code § 171.109(b). The Comptroller interprets this provision as requiring a corporation first to
determine its "debts" according to generally accepted accounting principles ("GAAP") before applying the
definition of "debt" in section 171.109(a)(3) to see if they are deductible. Both parties agree that TUEC's
future rentals under the operating leases are not "debt" according to GAAP. The Comptroller argues that
because the future rentals do not meet the first part of the test, they are not deductible regardless of whether
they fall within the section 171.109(a)(3) definition of "debt."

 Confusion about the proper interpretation of this statute arises for two reasons: First,
section 171.109(b) requires corporations to compute "debt" according to GAAP, while GAAP technically
speaks in terms of "liabilities" rather than "debt." Second, section 171.109(b) contains a proviso at the
beginning, but the proviso does not enumerate the exceptions to which it refers or how extensive those
exceptions are. (3) TUEC suggests we should construe these ambiguities as evidence of the legislature's intent
to expand the class of debt-like deductions beyond those that qualify as liabilities under GAAP. In other
words, TUEC argues that some things are deductible even if they are not liabilities under GAAP, so long
as they meet the definition of "debt" in section 171.109(a)(3). We disagree.

 In construing this statute, we are mindful of several rules of statutory construction. First,
the fundamental and dominant rule of construction requires us to ascertain, if possible, the legislature's intent
in enacting the statute. See Calvert v. Texas Pipe Line Co., 517 S.W.2d 777, 780 (Tex. 1974). 
Second, the legislature enacts statutes imposing franchise tax purely for revenue purposes. Federal Crude
Oil Co. v. Yount-Lee Oil Co., 52 S.W.2d 56, 61 (Tex. 1932). We therefore liberally construe franchise
tax statutes so as to effectuate their purpose. Id.; see also Isbell v. Gulf Union Oil Co., 209 S.W.2d 762,
764 (Tex. 1948); Davis v. State, 846 S.W.2d 564, 570 (Tex. App.--Austin 1993, no writ). 
Furthermore, to promote uniformity and equality in taxation, we construe tax exemptions--and provisions
tantamount to tax exemptions--strictly against the taxpayer and in favor of the taxing authority. See
Bullock v. National Bancshares Corp., 584 S.W.2d 268, 271-72 (Tex. 1979). (4) We believe the
provision at issue in this case, one authorizing a deduction, is tantamount to an exemption. See Davis v.
Fair, 707 S.W.2d 711, 716 (Tex. App.--Eastland 1986, no writ) (court uses terms "deduction" and
"exemption" interchangeably for purposes of employing rule of construction); American Bank and Trust
Co. v. Dallas County, 679 S.W.2d 566, 574 (Tex. App.--Dallas 1984, no writ). Finally, as a general
rule, we may give substantial weight to an administrative agency's contemporaneous interpretation of an
ambiguous statute, so long as the interpretation is reasonable, especially when the agency has special
expertise in the area. E.g., Dodd v. Meno, 870 S.W.2d 4, 7 (Tex. 1994); Quorum Sales, Inc. v. Sharp,
910 S.W.2d 59, 62 (Tex. App.--Austin 1995, writ denied). Application of these rules leads us to
conclude that the Comptroller's interpretation of the present statute is correct.

 Moreover, the history behind the legislature's enactment of section 171.109 supports our
conclusion. Before the legislature enacted section 171.109, the Comptroller did not require corporations
to apply GAAP when calculating franchise tax. Corporations using different accounting methods treated
certain costs differently on their books. Based solely on their different bookkeeping methods, some
corporations avoided some or all franchise tax on certain costs while other corporations paid greater tax
on those same costs. We determined that the Comptroller's different treatment of similarly situated
corporations violated the equal and uniform taxation provision of the Texas Constitution. See Bullock v.
Sage Energy Co., 728 S.W.2d 465 (Tex. App.--Austin 1987, writ ref'd n.r.e.); see also Tex. Const. art.
VIII, § 1. To remedy this situation, the legislature in 1987 added section 171.109(b), the general
requirement that corporations use GAAP for bookkeeping.

 At the same time, the legislature added the definition of "debt" in section 171.109(a)(3). 
This enactment was intended to overrule two other cases we decided adversely to the Comptroller: State
v. Sun Refining & Marketing, Inc., 740 S.W.2d 552 (Tex. App.--Austin 1987, writ denied), and State
v. Sun Oil Co., 740 S.W.2d 556 (Tex. App.--Austin 1987, no writ). See Sharp v. Caterpillar, Inc.,
932 S.W.2d 230, 233 (Tex. App.--Austin 1996, writ denied). In the Sun cases, we held that certain
contingent and estimated liabilities could be deducted from "surplus" in franchise tax calculation. By
enacting the current definitions of "debt" and "surplus," the legislature expressly limited deductions to sum-certain, legally enforceable obligations that must be paid within an ascertainable period of time or on
demand. Caterpillar, 932 S.W.2d at 234; see also Arch Petroleum, Inc. v. Sharp, No. 03-97-143-CV, slip op. at 3 (Tex. App.--Austin Dec. 18, 1997, no pet.).

 Accordingly, we do not agree with TUEC that the legislature intended to expand the class
of debt-like deductions beyond those eligible under GAAP. To the contrary, the proviso as it applies to
debt-like deductions appears to reflect a legislative intent to limit the class. See Arch Petroleum, slip op.
at 4. Moreover, the legislature's use of the word "debt" instead of "liability" does not necessarily imply an
intention to disregard the GAAP concept of liability altogether.

 In short, the enactment of section 171.109(a) and (b) evidences the legislature's intent that: 
(1) corporations generally keep their books according to GAAP, and (2) deductible obligations include
only sum-certain, non-contingent obligations. The Comptroller's interpretation and application of the
statute harmonizes the subsections and gives the most effect to the legislature's intent on both issues. We
therefore hold that the computation of deductible "debt" for franchise tax purposes requires, first, that the
"debt" be a liability under GAAP and, second, that it satisfy the restricted definition of "debt" in section
171.109(a)(3). (5) We conclude that the district court did not err in granting the Comptroller's motion for
summary judgment and denying TUEC's motion for summary judgment. We overrule TUEC's first point
of error.

 In its second point of error, TUEC contends the district court erred in granting the
Comptroller's counterclaim. In its counterclaim, the Comptroller argued that if the Tax Code allows TUEC
to deduct its future rentals as debt, it also requires TUEC to include TUEC's future revenues from the
operating leases as an asset. The Comptroller asserted this counterclaim as an alternative argument,
contingent upon the district court's granting TUEC's refund. The district-court judgment, however,
contains language that appears to grant both items of requested relief, with the granting of the counterclaim
being contingent on TUEC being awarded a tax refund. The judgment does not, however, award TUEC
a tax refund. It is clear the district court refused to award TUEC a tax refund because the court did not
consider the future rentals under the operating leases to be deductible. Because the trial court determined
that the contingency would not happen, i.e., that TUEC could not deduct the future rentals under the
operating leases as "debt," the issue presented in the Comptroller's contingent counterclaim was moot. 
The portion of the judgment purporting to grant the Comptroller's counterclaim was therefore improper. 
See Ferguson v. DRG/Colony North, Ltd., 764 S.W.2d 874, 880 (Tex. App.--Austin 1989, writ
denied). We sustain point of error two.



CONCLUSION

 We modify the judgment of the trial court to delete the portion granting the Comptroller's
counterclaim and affirm it as modified.



 

 J. Woodfin Jones, Justice

Before Chief Justice Carroll, Justices Jones and Kidd; Chief Justice Carroll not participating

Modified and, as Modified, Affirmed

Filed: February 26, 1998

Publish

1. The Tax Code required TUEC to sue both the Comptroller and the State Attorney General. See Tax
Code § 112.151(b). The interests of the Comptroller and the Attorney General do not diverge in this case. 
For convenience, we will refer to both collectively as "the Comptroller."
2. Although the franchise tax statute imposes tax on both corporations and limited liability companies,
most of the statutory provisions use only the word "corporation." The Tax Code defines the term
"corporation" to include a limited liability company. See Tax Code § 171.101(b)(3)(A) (West Supp.
1998). For convenience, we will use the term "corporation" even though TUEC appears to be a limited
liability company.
3. The Comptroller points out another exception to the GAAP rule that the proviso may reference. That
is, section 171.109(c) allows certain small corporations to use federal income tax accounting methods,
rather than GAAP, to calculate franchise tax. See Tax Code § 171.109(c).
4.   We apply a contrary rule only if doubt about the applicability of a tax remains after we employ the
dominant rules of statutory construction. In that circumstance, we resolve ambiguities in favor of the
taxpayer, against the taxing authority. See Calvert v. Texas Pipe Line Co., 517 S.W.2d 777, 781 (Tex.
1974); Wilburn v. State, 824 S.W.2d 755, 760 (Tex. App.--Austin 1992, no writ). TUEC does not
dispute that its business comes within the scope of the franchise tax statute.
5. We do not express an opinion on the computation of "debt" for a small corporation that opts to use
federal income tax accounting pursuant to section 171.109(c). See footnote 3, supra.


ion to disregard the GAAP concept of liability altogether.

 In short, the enactment of section 171.109(a) and (b) evidences the legislature's intent that: 
(1) corporations generally keep their books according to GAAP, and (2) deductible obligations include
only sum-certain, non-contingent obligations. The Comptroller's interpretation and application of the
statute harmonizes the subsections and gives the most effect to the legislature's intent on both issues. We
therefore hold that the computation of deductible "debt" for franchise tax purposes requires, first, that the
"debt" be a liability under GAAP and, second, that it satisfy the restricted definition of "debt" in section
171.109(a)(3). (5) We conclude that the district court did not err in granting the Comptroller's motion for
summary judgment and denying TUEC's motion for summary judgment. We overrule TUEC's first point
of error.

 In its second point of error, TUEC contends the district court erred in granting the
Comptroller's counterclaim. In its counterclaim, the Comptroller argued that if the Tax Code allows TUEC
to deduct its future rentals as debt, it also requires TUEC to include TUEC's future revenues from the
operating leases as an asset. The Comptroller asserted this counterclaim as an alternative argument,
contingent upon the district court's granting TUEC's refund. The district-court judgment, however,
contains language that appears to grant both items of requested relief, with the granting of the counterclaim
being contingent on TUEC being awarded a tax refund. The judgment does not, however, award TUEC
a tax refund. It is clear the district court refused to award TUEC a tax refund because the court did not
consider the future rentals under the operating leases to be deductible. Because the trial court determined
that the contingency would not happen, i.e., that TUEC could not deduct the future rentals under the
operating leases as "debt," the issue presented in the Comptroller's contingent counterclaim was moot. 
The portion of the judgment purporting to grant the Comptroller's counterclaim was therefore improper. 
See Ferguson v. DRG/Colony North, Ltd., 764 S.W.2d 874, 880 (Tex. App.--Austin 1989, writ
denied). We sustain point of error two.



CONCLUSION

 We modify the judgment of the trial court to delete the portion granting the Comptroller's
counterclaim and affirm it as modified.