Carole Keeton **RYLANDER, Comptroller of Public Accounts of the State of Texas; and John Cornyn, Attorney General of the State of Texas, Appellants,**

v.

**B & A MARKETING COMPANY, by and through its Successor–in–Interest, ATLANTIC RICHFIELD COMPANY, Appellee.**

No. 03–98–00563–CV.

Court of Appeals of Texas, Austin.

July 15, 1999.

328

John Cornyn, Attorney General, Nancy L. Prosser, Assistant Attorney General, Austin, for Appellant.

Debora B. Alsup, Thompson & Knight, P.C., Austin, for Appellee.

Before Chief Justice ABOUSSIE, Justices KIDD and B.A. SMITH.

MARILYN ABOUSSIE, Chief Justice.

Appellee B & A Marketing Company, by and through its successor-in-interest Atlantic Richfield Company ("B & A"), sued the Texas Comptroller of Public Accounts and the Texas Attorney General (collectively, "the Comptroller"),[1] for a refund of "additional tax" paid under protest. Both parties moved for summary judgment; the trial court granted B & A's motion in all

---

1. B & A sued John Sharp, the Texas Comptroller of Public Accounts, and Dan Morales, the Texas Attorney General, in their official capacities. Since this appeal was filed, Carole Keeton Rylander has replaced John Sharp as the Comptroller, and John Cornyn has replaced Dan Morales as Attorney General. The public officers' successors have been automatically substituted as parties to this appeal. See Tex.R.App. P. 7.2(a).

respects and denied the Comptroller's motion in all respects. The Comptroller now appeals the trial court judgment. We will reverse the trial court judgment and render judgment in favor of the Comptroller.

## STATUTORY AND PROCEDURAL BACKGROUND

Texas imposes a franchise tax on corporations for the privilege of doing business in Texas. *See* Tex. Tax Code Ann. §§ 171.001–.687 (West 1992 & Supp.1999) ("Franchise Tax Act"); *Bullock v. National Bancshares Corp.*, 584 S.W.2d 268, 270 (Tex.1979); *General Dynamics Corp. v. Sharp*, 919 S.W.2d 861, 863 (Tex.App.—Austin 1996, writ denied). The franchise tax is imposed annually on each corporation that is incorporated in Texas or that conducts business in Texas. *See* Tex. Tax Code Ann. § 171.001. The franchise tax is imposed on a prospective basis: a corporation pays the tax on May 15 of each year for the privilege of doing business in Texas *that* year (the "report year"), and the tax is based on the "business done by the corporation" during its previous fiscal year. *See id.* §§ 171.151–.153; .1532. The franchise tax is calculated by multiplying the franchise tax base by the franchise tax rate. *See id.* § 171.002.

Before 1992, the franchise tax base consisted solely of a corporation's "taxable capital." [2] In 1991, the legislature amended the Franchise Tax Act to add "earned surplus" [3] as an additional tax base from which to calculate the franchise tax.[4] It is important to note, however, that not all corporations are subject to both the taxable capital and earned surplus components of the franchise tax. Federal law prohibits states from imposing any kind of income tax on a corporation whose only contacts with a state are solicitation of sales of tangible personal property, such as a mail order company. *See* 15 U.S.C.A. §§ 381–384 (1997) (hereafter "P.L. 86–272").[5] P.L. 86–272 applies only to the earned surplus component of the franchise tax because earned surplus is measured by net income. Therefore, a corporation whose activities fall within the protection of P.L. 86–272 may only be subject to franchise tax based on taxable capital.

The 1991 Franchise Tax Act amendments that added the "earned surplus" component to the franchise tax also added the "additional tax" statute that is at issue in this case. *See* Act of August 12, 1991, 72d Leg., 1st C.S., ch. 5, § 8.02, 1991 Tex. Gen. Laws 134, 152 (codified at Tex. Tax Code Ann. § 171.0011 (West 1992), since amended).[6] The additional tax statute was amended the following legislative session; however, in this case we are called upon to construe the version in effect January 1, 1992 through December 31, 1993. That version provided in relevant part:

### § 171.0011. Additional Tax

(a) An additional tax is imposed on a corporation that is subject to the tax imposed under Section 171.001 and that is no longer subject to the taxing jurisdiction of this state in relation to the tax on net taxable earned surplus.

---

**2.** A corporation's "taxable capital" consists of stated capital and surplus. *See* Tex. Tax Code Ann. § 171.101(a)(1) (West 1992). "Stated capital" is defined by reference to the Texas Business Corporation Act. *See* Tex. Bus. Corp. Act. Ann. art. 1.102(24) (West Supp.1999). The Franchise Act defines "surplus" as net assets minus stated capital. *See* Tex. Tax Code Ann. § 171.109(a)(1) (West 1992).

**3.** "Earned surplus" is essentially adjusted reportable federal net income, or net profit. *See* Tex. Tax Code Ann. § 171.109(a)(1); *General Dynamics Corp. v. Sharp*, 919 S.W.2d

861, 863 (Tex.App.—Austin 1996, writ denied).

**4.** *See* Act of August 12, 1991, 72d Leg., 1st C.S., ch. 5, § 8.031(a), 1991 Tex. Gen. Laws 134, 154 (codified at Tex. Tax Code Ann. § 171.002 (West 1992 & Supp.1999)).

**5.** We adopt the parties' nomenclature for the applicable federal statute.

**6.** All references to the additional tax statute are to the 1992 version unless otherwise noted.

Tex. Tax Code Ann. § 171.0011(a) (West 1992).

The dispute in this case arose when the Comptroller assessed an additional tax against B & A's earned surplus from January 1, 1992, through the date of B & A's dissolution, December 18, 1992. Before dissolving and during the years B & A did business in Texas, it owned and operated a pipeline and engaged in purchases and sales of natural gas. For the privilege of doing business in Texas during calendar year 1992, B & A paid the franchise tax based on its financial data from fiscal year 1991. If B & A had exercised its privilege to do business in Texas during calendar year 1993, it would have been required to pay franchise tax based on its financial data from fiscal year 1992. However, because B & A did not do business in Texas after it dissolved in December 1992, B & A owed no franchise tax for the privilege of doing business in Texas in 1993. Therefore, B & A paid no franchise tax on the $75,091,779 in gross receipts it received and the $30,882,272 earned surplus calculated for the period from January 1, 1992 through December 18, 1992. The Comptroller, based on her interpretation of section 171.0011, assessed an "additional tax" liability of $1,389,702.24 for these eleven and one-half months of previously untaxed earned surplus.

After exhausting its administrative remedies, B & A paid the asserted deficiency plus penalties and interest, $2,125,372.21, and then filed this suit for a refund of the entire amount. *See* Tex. Tax Code Ann. §§ 111.101–.110; 112.001–.052 (West 1992 & Supp.1999). In its petition and its motion for summary judgment, B & A argued that the additional tax in the 1992 version of section 171.0011 applied only to a corporation that limits its activities in Texas to sales protected by P.L. 86–272; it did not apply to a dissolved corporation. It argued in the alternative that if section 171.0011 did apply to a dissolved corporation, then the statute was unconstitutional. The trial court granted B & A's motion for summary judgment and denied the Comptroller's motion for summary judgment. The Comptroller now appeals to this Court to reverse the trial court judgment and render judgment for the Comptroller.

## DISCUSSION

■■■ The facts in this case are not in dispute. The resolution of this cause turns on questions of law; therefore, we review *de novo* the trial court judgment granting B & A summary judgment. *See Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex.1994); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985). The trial court did not specify on which of B & A's two grounds it based its judgment; therefore, we must review both grounds to determine if either supports summary judgment. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995).

■■■ In her first issue, the Comptroller argues that the 1992 additional tax statute applies to a corporation that dissolves; therefore, the trial court erred by rendering judgment for B & A. To interpret the additional tax statute, we must keep in mind several rules of statutory construction. First, we must ascertain the legislature's intent in enacting the statute. *Texas Utils. Elec. Co. v. Sharp*, 962 S.W.2d 723, 726 (Tex.App.—Austin 1998, pet. denied). In determining the meaning of a statute, a reviewing court must consider the entire act, its nature and object, and the consequences that would follow from each construction. *See Sharp v. House of Lloyd*, 815 S.W.2d 245, 249 (Tex.1991). If we doubt the applicability of the tax to the taxpayer, the statute must be strictly construed against the taxing authority and liberally construed in favor of the taxpayer. *See Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166, 169 (Tex.1977); *Texas Utils. Elec. Co.*, 962 S.W.2d at 726 n. 1; *Calvert v. Humble Oil & Refining Co.*, 381 S.W.2d 229, 232 (Tex.Civ.App.—Austin 1964, writ ref'd n.r.e.). Once we have determined the tax is applicable to the tax-

payer, we should liberally construe the statute to effectuate its purpose of raising revenue. *See Texas Utils. Elec. Co.,* 962 S.W.2d at 726 (statutes enacted purely for revenue purposes should be liberally construed). Finally, "[c]onstruction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the interpretation is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore,* 845 S.W.2d 820, 823 (Tex.1993); *see also Quorum Sales, Inc. v. Sharp,* 910 S.W.2d 59, 62 (Tex. App.—Austin 1995, writ denied) (citing Code Construction Act, Tex. Gov't Code Ann. § 311.023(6) (West 1988)).

■ Before we review the Comptroller's construction of the additional tax statute, we must detail B & A's position regarding the statute's plain meaning. B & A argues that the following two clauses of the additional tax statute must be met *at the same time* in order for the additional tax to apply: "[a]n additional tax is imposed on a corporation that is subject to the tax imposed under Section 171.001 [the franchise tax] *and* that is no longer subject to the taxing jurisdiction of this state *in relation to the tax on net taxable earned surplus.*" Tex. Tax Code Ann. § 171.0011(a) (emphasis added). B & A contends that the plain wording of the statute applies the additional tax to a corporation that continues to be subject to the franchise tax after it changes its structure so that it is no longer subject to the earned surplus component of the franchise tax. This would limit the statute's application only to P.L. 86–272 corporations, because, as we explained above, corporations coming under the protection of P.L. 86–272 may be taxed only on the taxable capital component of the franchise tax.

The Comptroller contends that section 171.0011 was added to the Franchise Tax Act to close a loophole in which profits earned in Texas escaped taxation, either by a corporation ceasing to do business in Texas or by continuing to do business in Texas after reorganizing. Either way, a corporation could earn profits in its last year of doing business in Texas and pay no tax on those profits, because the franchise tax requires corporations to pay for the privilege of doing business during the current year based on profits from the year before. B & A provides a good example. It paid its franchise tax as required in 1992 for the privilege of doing business in Texas in 1992. This tax was based on its profits in 1991. Because it did not do business in Texas at all in 1993, it owed no franchise tax. Therefore, the thirty million dollar profit earned by B & A in 1992 would not be taxed were it not for the additional tax statute.

Even if applying the 1992 additional tax statute to corporations like B & A may be good policy for the state, the question we must resolve in this case is whether the statute actually provides for such taxation. The Comptroller argues that the language of the statute supports her interpretation. The first criterion of the statute, that the corporation "is subject to the tax imposed under Section 171.001," simply identifies the types of entities subject to the additional tax—those that are subject to the franchise tax. The second criterion, "and that is no longer subject to the taxing jurisdiction of this state in relation to the tax on net taxable earned surplus," identifies an event that subjects those entities to the additional tax. A corporation triggers the event, thus becoming "no longer subject to the taxing jurisdiction of the state in relation to the tax on net taxable earned surplus," when it dissolves, merges out of existence, withdraws, or when it changes its business activities to fall within the protection of P.L. 86–272.

The Comptroller's promulgated rule concerning the additional tax statute set forth in the Texas Administrative Code is consistent with the Comptroller's argument:

**§ 3.567. Additional Tax on Earned Surplus**

(a) Effective date. The additional tax imposed by the Tax Code, § 171.0011, applies to a corporation which, after December 31, 1991, *no longer has sufficient nexus with Texas* to be subject to a tax based on earned surplus. . . .

(b) Due date. . . . As long as the proper amount is paid and an amended return, if needed, is filed within 60 days *after the corporation dissolves, merges, or withdraws,* then no penalty or interest will be assessed.

34 Tex. Admin. Code § 3.567 (1996) (emphasis added). This provision took effect July 29, 1992, approximately five months before B & A dissolved.

The Comptroller argues that her determination that B & A is subject to the additional tax is a reasonable construction of the statute because: (1) B & A was subject to the franchise tax, thus fulfilling the first criterion; and (2) when B & A dissolved, it was no longer subject to the taxing jurisdiction of the state in relation to the tax on net taxable earned surplus. The Comptroller challenges B & A's contention that the statutory language requires a corporation to meet both criteria at the same time, thus limiting the statute's application to P.L. 86–272 corporations, by pointing out that the statutory language does not require a corporation to remain subject to the taxable capital component of the franchise tax in order for the additional tax to apply. The Comptroller's construction thus includes P.L. 86–272 corporations, which remain subject to the taxable capital component of the franchise tax, as well as corporations that are no longer subject to either component of the franchise tax by reason of withdrawal, merger, or dissolution.

To summarize the parties' respective positions, both B & A and the Comptroller construe the second clause of subsection (a) to require an event to occur in order to trigger application of the additional tax. B & A argues that the *only* triggering event is a corporation's change in activities to come within P.L. 86–272, because both clauses are in the present tense and are joined by the conjunction "and." B & A argues alternatively that even if both requirements do not have to be met at the same time, the present tense language of the first clause requires that the corporation continue to exist after it becomes no longer subject to the tax on net taxable earned surplus. Therefore, the statute may apply to corporations that withdraw from the state and continue to exist, but it does not apply to corporations that dissolve or merge out of existence.

The Comptroller construes the first clause, requiring that a corporation "is subject to the tax imposed under Section 171.001" to mean that an entity must be subject to the franchise tax at the time the event occurs that causes the entity to cease to be subject to the tax on net taxable earned surplus, but it does not have to continue to be subject to the franchise tax after the event. This first clause simply identifies those entities that are subject to the additional tax, thus excluding, for example, partnerships. The Comptroller argues that a corporation "is no longer subject to the tax" on net taxable earned surplus when it changes its activities to come within P.L. 86–272, as well as when it withdraws, merges, or dissolves.

The Comptroller argues that subsection (b) of the additional tax statute, which explains how to calculate the additional tax, supports its construction of the first clause of subsection (a). Subsection (b) provides that the period for which the tax is calculated is: "the period beginning on the day after the last day for which the tax imposed on net taxable earned surplus was computed under Section 171.1532 and ending on the date the corporation is no longer subject to the taxing jurisdiction of this state in relation to the tax on net taxable earned surplus." Tex. Tax Code Ann. § 171.0011(b). This section reveals the legislature's intent to tax earned surplus from the day after a corporation's franchise tax was last calculated through the

day the corporation's earned surplus can no longer be taxed. Neither subsection demonstrates an intent for the additional tax to apply only to those corporations that change their business activities to come within the protection of P.L. 86–272. In fact, the structure of subsection (a) leads us to believe that the legislature intended the statute to include any number of events that may cause an entity to become no longer subject to the tax on earned surplus. If the legislature intended the statute to apply to only one situation, it could have stated that situation in the statute, rather than providing a two-part test to evaluate whether the entity will be subject to the additional tax.

The Comptroller's construction of the statute is reasonable and does not contradict the plain meaning of the statute; she has enumerated several events that would result in the state losing taxing jurisdiction over a corporation's earned surplus, including dissolution. When a corporation that is subject to the franchise tax dissolves, regardless of whether it last paid its franchise tax based on taxable capital or earned surplus, it is no longer subject to be taxed on its earned surplus. While B & A has provided us an alternative interpretation of the statute, we give deference to the agency's construction of a statute it is charged with enforcing when that construction is reasonable and does not contradict the plain meaning of the statute. *See Tarrant Appraisal Dist.*, 845 S.W.2d at 823. The Comptroller's first issue is sustained.

The Comptroller next challenges B & A's contention that as applied to B & A the additional tax statute is unconstitutional. In its motion for summary judgment, B & A challenged the statute on the grounds that it had no rational, legitimate basis and thus violated B & A's rights of equal protection, equal and uniform taxation, due process, and due course of law. *See* U.S. Const. amend. V, XIV; Tex. Const. art.

VIII, § 1; art. I, §§ 3, 19. B & A also contended that the statute imposed an undue burden on interstate commerce, thus violating the Commerce Clause. *See* U.S. Const. art. I, § 8.

 To determine the constitutionality of a statute, we begin with the presumption that it is constitutional. *See Enron Corp. v. Spring Indep. Sch. Dist.*, 922 S.W.2d 931, 934 (Tex.1996); *Vinson v. Burgess*, 773 S.W.2d 263, 266 (Tex.1989). The party challenging the constitutionality of a statute bears the burden of demonstrating that the enactment fails to meet constitutional requirements. *See Enron Corp.*, 922 S.W.2d at 934. Tax legislation deserves "special consideration." *See Vinson*, 773 S.W.2d at 266; *see also Regan v. Taxation With Representation*, 461 U.S. 540, 547, 103 S.Ct. 1997, 76 L.Ed.2d 129 (1983).

 Both the United States Constitution and the Texas Constitution require equal protection of the law. *See* U.S. Const. amend XIV, § 1; Tex. Const. art. I, § 3. Because a fundamental right is not at issue in this case, the additional tax statute must only be rationally related to a legitimate state purpose to withstand B & A's equal protection challenge. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976); *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 631 (Tex.1996). The Texas Constitution's mandate that all taxes be equal and uniform requires that all persons falling within the same class be taxed alike. *See Sharp v. Caterpillar, Inc.*, 932 S.W.2d 230, 240 (Tex.App.—Austin 1996, writ denied). A tax classification will be upheld unless it has no rational basis. *See id.* Finally, under federal and state guarantees of substantive due process, legislation that does not affect a fundamental right or interest is valid if it bears a rational relationship to a legitimate state interest.[7] *See William-*

---

**7.** Both the state due course of law clause and the federal due process clause contain a pro-

cedural component and a substantive component. *See Barshop v. Medina County Under-*

son v. Lee Optical, 348 U.S. 483, 491, 75 S.Ct. 461, 99 L.Ed. 563 (1955); *Texas Workers' Compensation Comm'n v. Garcia*, 893 S.W.2d 504, 525 (Tex.1995).

■■■■■■ B & A has not carried its burden in this case to rebut the presumption of constitutionality by showing that the statute is not rationally related to a legitimate state interest, that the statute's tax classification has no rational basis, or that the tax is not applied equally and uniformly within the class to be taxed. First, the additional tax does not constitute double taxation. The additional tax is a tax on profits earned in Texas but not subject to the state's franchise tax. Although the tax is essentially an income tax, it is not improper that the statute is included in the Franchise Tax Act, because the additional tax will apply only to those entities already subject to the franchise tax.

■■■ B & A argues that there is no rational basis for imposing an income tax solely on corporations that cease to do business in Texas in any given year. We note first that the tax on income is imposed not only on corporations that cease to do business in Texas, but also on those that continue to do business in Texas after changing operations to come within the protection of P.L. 86–272. Corporations that continue to be subject to the earned surplus component of the franchise tax will be taxed through the mechanics of the franchise tax. Thus, the tax classification identified in the additional tax statute is neither unreasonable nor irrational, because it seeks to tax a share of business income earned in this state that would otherwise escape taxation. It applies even-handedly to all entities subject to the franchise tax that change their business or cease to do business in Texas "because the amount of the tax is always based upon the period of previously untaxed earned surplus." *Rylander v. 3 Beall Brothers 3, Inc.*, No. 03–98–00533–CV, slip op. at 14, — S.W. ——, ——, 1999 WL 645003 (Tex.App.—Austin Aug. 26, 1999, no pet. h.). Furthermore, the additional tax statute is rationally related to the state's legitimate interest in raising revenue because it taxes income earned by the corporation in the state. We cannot say that the legislature's decision to assess an additional tax on profits that would otherwise leave the state untaxed was irrational or unreasonable. *See id.* We now turn to B & A's contention that the additional tax violates the Commerce Clause.

■■■■ A state tax does not violate the Commerce Clause if it: (1) is applied to an activity with a substantial nexus with the taxing state; (2) is fairly apportioned; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the state. *See Complete Auto Transit Inc. v. Brady*, 430 U.S. 274, 279, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977); *Vinmar, Inc. v. Harris County Appraisal Dist.*, 947 S.W.2d 554, 555 (Tex. 1997).

■■■■ B & A contends that the additional tax discriminates against interstate commerce [8] because it punishes corporations for taking their business out of Tex-

---

*ground Water Conservation Dist.*, 925 S.W.2d 618, 632 (Tex.1995). B & A has not made specific allegations regarding the statute's violation of due course of law and due process, arguing only that the statute has no rational, legitimate basis. Accordingly, we assume B & A challenges the substantive component of both clauses. *See id.* at 633 (statute found to be rationally related to legitimate state purpose satisfied substantive component of due course of law clause).

**8.** In its motion for summary judgment, B & A included in a footnote the argument that the statute violates the "substantial nexus" requirement. It has not reurged this argument in its response to the Comptroller's brief. In any event, this argument fails because the tax assessment was based on activities conducted in the state, before B & A dissolved, while B & A was physically present in Texas. Therefore, the substantial nexus requirement is satisfied. *See Rylander v. 3 Beall Brothers 3, Inc.*, No. 03–98–00533–CV, slip op. at 15, — S.W.2d ——, at ——, 1999 Wl 645003 (Tex. App.—Austin Aug. 26, 1999, no pet. h.).

as. B & A's argument focuses on the different treatment between corporations that do business in Texas versus those that become no longer subject to the tax on earned surplus. We believe this argument is misplaced. The commerce clause prohibits states from discriminating against foreign enterprises competing with local businesses, and from discriminating against commercial activity occurring outside the taxing state. *See Oklahoma Tax Comm'n v. Jefferson Lines, Inc.,* 514 U.S. 175, 197, 115 S.Ct. 1331, 131 L.Ed.2d 261 (1995). So long as the statute applies in the same manner to Texas and foreign corporations alike, the statute does not violate the Commerce Clause. *See General Dynamics Corp.,* 919 S.W.2d at 869. The additional tax statute applies to all corporations evenly, whether local or foreign. Both local and foreign corporations are subject to the same additional tax calculations; therefore, both local and foreign corporations pay the same amount of additional tax for the same amount of income earned in Texas. Because the statute does not favor local corporations over foreign corporations, it does not violate the Commerce Clause. We sustain the Comptroller's second issue.

## CONCLUSION

We hold that the additional tax statute applies to B & A and that the statute is not unconstitutional. Having sustained both of the Comptroller's issues, we reverse the judgment of the trial court and render judgment in favor of the Comptroller.