TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00293-CV







Texas Property and Casualty Insurance Guaranty Association, Appellant



v.



Jack M. Webb, as Special Deputy Receiver of Employers Casualty Company and


Employers National Insurance Company; and Jose Montemayor, in His Capacity


as Receiver of Employers Casualty Company and Employers National


Insurance Company, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 97-07070, HONORABLE F. SCOTT McCOWN, JUDGE PRESIDING








 This is an appeal from a summary judgment involving the claims priority scheme
of the liquidation statute of the Texas Insurance Code. Appellant Texas Property and Casualty
Insurance Guaranty Association ("TPCIGA") appeals from a summary judgment in favor of
appellees Jack M. Webb, as special deputy receiver of Employers Casualty Company ("ECC")
and Employers National Insurance Company ("ENIC"), and Jose Montemayor, the Commissioner
of Insurance in his capacity as permanent receiver of ECC and ENIC.

 As property and casualty insurers that have been declared insolvent, ECC and
ENIC (collectively "the estates") have assets that are to be paid by the receiver or special deputy
receiver in accordance with the claims priority scheme set forth in Texas Insurance Code article
21.28, section 8 ("the liquidation statute"). We are presented with the question of whether
TPCIGA's claims against the estates' assets arising from defense costs incurred in defending
liability and workers' compensation claims are entitled to Class 1 priority as claims-handling
expenses or Class 2 priority as payments of policyholder claims. Because we conclude that the
claims-handling expense category under Class 1 does not include expenses incurred in defending
insureds but that such costs are properly classified as payments of policyholder claims under Class
2, we affirm the judgment of the district court.


BACKGROUND Two Insurance Code articles govern the receivership proceedings underlying the
instant cause: (1) article 21.28-C, (1) which establishes TPCIGA, and (2) article 21.28, (2) which
outlines the general statutory duties of conservators and receivers for impaired insurance
companies. TPCIGA is an association of all licensed property and casualty insurers in Texas. 
See Guaranty Act § 6. By assessing contributions from solvent member insurers, TPCIGA
maintains a guaranty fund that assumes insolvent insurers' obligations with respect to statutorily
defined "covered claims." Id. § 5(8). When TPCIGA pays a claim or incurs a claim-related
expense in connection with a particular insolvent insurer, TPCIGA has a corresponding claim
against the insolvent insurer's assets for the amount of the claim or expense payment. See id.
§ 11(c), (d); see also Tex. Ins. Code Ann. art. 21.28, § 8.

 The receiver's duties and responsibilities in liquidating an insolvent insurance
company are comparable to those of a bankruptcy trustee. As with a bankruptcy trustee, the
receiver must classify according to statute the various types of creditors, evaluate the validity of
claims against the estate, and make distributions. The receiver's duties in the liquidation of an
insurance company are set forth in article 21.28 of the Texas Insurance Code entitled
"Liquidation, Rehabilitation, Reorganization or Conservation of Insurers." Tex. Ins. Code Ann.
art. 21.28, § 2. The liquidation statute provides a framework within which the receiver conserves
the assets of the company and makes distributions among creditors and claimants. See id. §§ 2,
8.

 The scheme providing for distribution of assets and classification of claims is set
forth in section (8)(a) of the liquidation statute. (3)
 The statute provides that the highest priority
classification, Class 1, is to be given to "[a]ll of the receiver's, conservator's, and supervisor's
costs and expenses of administration," "all of the expenses of an insurance guaranty association
or foreign insurance guaranty association in handling claims," and secured creditor claims. Id.
§ 8(a)(2)(A)(i)-(iii) (emphasis added). Class 1 claims are entitled to priority over all other classes
of claims against the estates.

 Class 2 includes two categories of claims: "[a]ll claims by policyholders,
beneficiaries, insureds, and liability claims against insureds covered under insurance policies and
insurance contracts issued by the insurer," and "[a]ll claims by an insurance guaranty association
or a foreign insurance guaranty association that are payments of proper policyholder claims." 
Id. § 8(a)(2)(B)(i), (ii) (emphasis added). Class 2 claims are paid only after full payment of Class
1 claims.

 The liquidation statute does not define the phrases "expenses . . . in handling
claims" or "payments of proper policyholder claims." In 1987, the statute directed the receiver 
to process and pay covered claims on behalf of TPCIGA. See Act of June 17, 1987, 70th Leg.,
R.S., ch. 1073, sec. 33, § 2(e), (g), 1987 Tex. Gen. Laws 3610, 3644-45. However, the receiver
was not required to defend insureds. See id. In August 1991, the legislature changed the system
for handling insolvent insurance company receiverships. The role of paying and processing
covered claims was transferred from the receiver to TPCIGA. See Act of Aug. 30, 1991, 72d
Leg., 2d C.S., ch. 12, sec. 1.20, § 8, 1991 Tex. Gen. Laws 252, 266-67. 

 In 1993, the legislature revised the Guaranty Act as it related to TPCIGA's duties
toward policyholders. TPCIGA's governing statute was amended to require TPCIGA to provide
a defense for policyholders when such a defense constituted a "covered claim." Act of June 17,
1993, 73d Leg., R.S., ch. 685, § 9.07, 1993 Tex. Gen. Laws 2559, 2633-34.

 In 1995, the legislature amended the liquidation statute. See Act of June 17, 1995,
74th Leg., R.S., ch. 1055, § 3, 1995 Tex. Gen. Laws 5216, 5217-18. Addressing the priority
provisions of the liquidation statute for the first time since 1987, the legislature expanded the
kinds of guaranty association claims that would receive Class 1 priority and also provided:  "For
the purpose of this subdivision, attorney's fees incurred by an insurance guaranty association or
foreign insurance guaranty association in the defense of an insured under a policy issued by an
impaired insurer constitute an expense incurred in handling claims." Id. Thus, effective June 17,
1995, "claims-handling expenses" explicitly include defense costs.

 TPCIGA has asserted claims against the estates for costs incurred in the defense
of third-party liability and workers' compensation claims under ECC and ENIC policies. The
facts relating to the claims are not in dispute. ECC and ENIC were placed into permanent
receivership on January 6, 1994. The claims in issue are the expenses incurred by TPCIGA
during the period from the inception of the ECC and ENIC receiverships through June 30, 1995. 
TPCIGA's claim against ECC in receivership is $1,402,321.63, and is comprised of
$1,369,419.63 in defense costs incurred by TPCIGA in connection with the defense of liability
claims under ECC policies, and $32,902.00 in defense costs incurred in connection with workers'
compensation claims under ECC policies. TPCIGA's claim against ENIC in receivership is
$109,416.44 of which $50,164.47 in defense costs was incurred by TPCIGA in defense of liability
claims under ENIC policies and $59,251.97 in defense costs was incurred in connection with
workers' compensation claims under ENIC policies.

 The special deputy receiver classified the defense costs as Class 2 claims. TPCIGA
brought this action against the special deputy receiver, as required by statute, to appeal the
classification. All parties filed motions for summary judgment. The district court granted
summary judgment in favor of appellees and against TPCIGA. 

 STANDARD OF REVIEW

 We review the judgment under the familiar precepts of summary judgment law. 
Determining the proper construction of a statute and the propriety of a ruling on a motion for
summary judgment are both questions of law. See Johnson v. City of Fort Worth, 774 S.W.2d
653, 656 (Tex. 1989); Texas Medical Liab. Trust v. Zurich Ins. Co., 945 S.W.2d 839, 842 (Tex.
App.--Austin 1997, writ denied). Summary judgment is proper when the movant proves that it is
entitled to judgment as a matter of law. See Tex. R. Civ. P. 166a. Where both parties file a
motion for summary judgment and one is granted and one is denied, we review the summary
judgment proof presented by both sides and determine all questions presented and "render such
judgment as the trial court should have rendered." Commissioners Court v. Agan, 940 S.W.2d
77, 80 (Tex. 1997). 

 In granting the appellees' motion for summary judgment, the district court
concluded that the proofs of claim appealed by TPCIGA were Class 2 claims pursuant to article
21.28 of the Texas Insurance Code. On appeal, TPCIGA challenges the court's granting of
summary judgment on that basis. 


DISCUSSION

 While involving the interplay between the Guaranty Act and the liquidation statute,
this case presents a single issue of statutory construction. TPCIGA argues that its legal costs
incurred in the defense of liability and workers' compensation claims under ECC and ENIC 
policies are claims-handling expenses entitled to Class 1 priority. Appellees contend that
providing a defense is a policy benefit and is properly classified as "payments of proper
policyholder claims" entitling TPCIGA to a Class 2 priority. The single issue in dispute, then,
is the proper priority to be accorded TPCIGA's claims for expenses incurred in defending liability
and worker's compensation claims under ECC and ENIC policies pursuant to the version of the
statutes in effect at the time the estates were placed into receivership.

 TPCIGA contends first that the language of the claims priority statute mandates that
the receiver of an insolvent insurer give Class 1 priority to "all expenses . . . in handling claims." 
Tex. Ins. Code Ann. art. 21.28, § 8(a)(2)(A)(ii). It necessarily follows, they argue, that all such
expenses unambiguously include TPCIGA's costs in defending claims. Similarly, they argue that
defense costs incurred by TPCIGA in defending liability and workers' compensation claims are
not "payments of proper policyholder claims." Id. § 8(a)(2)(B)(ii). Because TPCIGA does more
than bear the cost of the defense and actually performs the services necessary to investigate,
manage, and defend the claim, TPCIGA urges that defense costs cannot be "payments of proper
policyholder claims." The receiver does not dispute that all claims-handling expenses are
included within Class 1. But that does not resolve the question before us, namely, what costs are
included in the phrase claims-handling expenses.

 Our objective when we construe a statute is to determine and give effect to the
legislature's intent. See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc., 966 S.W.2d 482,
484 (Tex. 1998); Union Bankers Ins. Co. v. Shelton, 889 S.W.2d 278, 280 (Tex. 1994); Harris
County Dist. Attorney's Office v. J.T.S., 807 S.W.2d 572, 574 (Tex. 1991). To determine
legislative intent, we turn first to the language of the statute and principles of statutory
construction. "The meaning of the statute must, in the first instance, be sought in the language
in which the act is framed, and if that is plain, . . . the sole function of the court is to enforce it
according to its terms." Caminetti v. United States, 242 U.S. 470, 485 (1917); accord St. Luke's
Episcopal Hosp. v. Agbor, 952 S.W.2d 503, 505 (Tex. 1996). If possible, then, we are to discern
legislative intent from the plain meaning of the words of the statute and enforce a provision as
written. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 240 (1989); City of Austin
v. L.S. Ranch, 970 S.W.2d 750, 752 (Tex. App.--Austin 1998, no pet.). If the statute is clear and
unambiguous, then we are to apply the statute according to the plain meaning of the words
employed by the legislature. See Cail v. Service Motors, Inc., 660 S.W.2d 814, 815 (Tex. 1983). 
We must not look to any one phrase, clause, or sentence of an act, but to the entire act itself. See
Willingham v. Hagerty, 553 S.W.2d 137, 140 (Tex. Civ. App.--Amarillo 1977, no writ).

 When legislative intent cannot be discerned from the plain meaning of the words
of the statute, we look to the legislative history and former statutory provisions, the circumstances
under which the statute was enacted, the object sought to be obtained, and the consequences of
a particular construction. See Union Bankers Ins. Co., 889 S.W.2d at 280. We also consider
"the old law, the evil, and the remedy." Tex. Gov't Code Ann. § 312.005 (West 1998). Finally,
we give consideration to an agency's interpretation of a statute that the agency is charged with
enforcing, especially when it has special expertise in the area, so long as that interpretation is
reasonable. See Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993); Texas
Utils. Elec. Co. v. Sharp, 962 S.W.2d 723, 726 (Tex. App.--Austin 1998, pet. denied). 

 With these principles in mind, we turn first to a determination of whether the
language at issue has a plain and unambiguous meaning with regard to the particular dispute in
the case. The plainness or ambiguity of statutory language is determined by reference to the
language itself, the specific context in which the language is used, and the broader context of the
statute as a whole. See Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469, 477 (1992). A
statute is ambiguous when it is capable of being understood by reasonably well-informed persons
in two or more different senses. See Teleprofits of Tex., Inc. v. Sharp, 875 S.W.2d 748, 750
(Tex. App.--Austin 1994, no writ) (citing 2A Norman J. Singer, Sutherland Statutory Construction
§ 45.02, at 6 (5th ed. 1992)). 

 When the legislature created the scheme for the priority of distribution of
receivership assets, it created two classes of insurance guaranty association claims: Class 1(2)
covering all guaranty association "expenses . . . in handling claims," and Class 2(2) covering all
guaranty association "payments of proper policyholder claims." Tex. Ins. Code Ann. art. 21.28,
§§ 8(a)(2)(A)(ii), 8(a)(2)(B)(ii). TPCIGA's argument that section 8(a) is clear and unambiguous
reduces to an assertion that the phrase "all expenses in handling claims," interpreted in the
context of the disputed statute, must include its defense costs. Citing Section 8(d) of the Guaranty
Act, TPCIGA asserts that it is specifically mandated by the statute to "investigate, adjust and
defend claims." But the actual language of the subsection is not so clear; rather, the association
is called upon to "investigate and adjust, compromise, settle, and pay covered claims to the extent
of the association's obligation and deny all other claims." Guaranty Act § 8(d).

 Neither of these classifications--claims-handling expenses or proper policyholder
claims--is more specifically defined. Nor are the terms themselves further defined in the statute. 
The parties advise us that no case law exists, and we have found none from which we may discern
the meaning of the statute in this regard. 

 In giving effect to the intent of the legislature, we are called upon to "take statutes
as [we] find them." RepublicBank Dallas, N.A. v. Interkal, Inc., 691 S.W.2d 605, 607 (Tex.
1985) (quoting Simmons v. Arnim, 220 S.W. 66, 70 (1920)). In Simmons, the supreme court
urged that courts



should search out carefully the intendment of a statute, giving full effect to all of
its terms. But they must find its intent in its language and not elsewhere . . . . 
They are not responsible for omissions in legislation. They are responsible for a
true and fair interpretation of the written law. It must be an interpretation which
expresses only the will of the makers of the law, not forced nor strained, but
simply such as the words of the law in their plain sense fairly sanction and will
clearly sustain. 



220 S.W. at 70. Because the language of the statute does not better inform us of its intent and the
omission of definitions and descriptions is evident, we cannot say that the words have a plain
meaning. 

 TPCIGA also argues that in 1995 the legislature enacted language "specifically in
response to this dispute" to clarify its intention that liability and workers' compensation defense
costs are to be included as claims-handling expenses accorded Class 1 priority. An amendment
to the liquidation statute provides:


For the purposes of this subdivision, attorney's fees incurred by an insurance
guaranty association or foreign insurance guaranty association in the defense of an
insured under a policy issued by an impaired insurer constitute an expense incurred
in handling claims.



Act of June 17, 1995, 74th Leg., R.S., ch. 1055, § 3, 1995 Tex. Gen. Laws 5216, 5217-18. 
Appellees respond that the 1995 amendment was effected in order to change the classification
provision, not merely to clarify it. The district court concluded that the "clarification" was
actually a change in the law and that, before 1995, the expenses in question were not Class 1
claims. We are not convinced by TPCIGA's argument that the statute is unambiguous and clear
on its face. From whatever facet we may view the statute, we conclude that with regard to this
dispute, and prior to June 17, 1995, its language is ambiguous. 

 Finding that the statute is ambiguous and that its meaning cannot be determined by
reference to the language alone, we turn to other standard rules of statutory construction to
interpret the meaning of section 8. Acknowledging the inextricable relationship between the
liquidation statute and the Guaranty Act, we review the relevant changes to both statutes. 

 Section 8 of the liquidation statute became law in 1987. Prior to 1992, the receiver
had responsibility for the administration, evaluation, and payment of claims with funds advanced
by TPCIGA. Under article 21.28, the receiver was not required to provide for the defense of
insureds of the insolvent company in pending or subsequent litigation. Even before the legislature
made it discretionary for the receiver to provide for the defense of insureds, it was the receiver's
policy not to provide a defense to insureds. Thus, the insured generally paid for its own defense
and then submitted these costs as part of a Class 2 claim.

 In August 1991, the legislature overhauled the system for handling insolvent
insurance company receiverships. The receiver's duty to administer, evaluate, and pay claims was 
transferred to a guaranty association for all companies placed in receivership after January 1,
1992. See Act of Aug. 30, 1991, 72d Leg., 2d C.S., ch. 12, sec. 1.20, § 8, 1991 Tex. Gen.
Laws 252, 266-67. In addition, TPCIGA's governing statute was amended to provide: "The
association is considered the insurer to the extent of its obligation on the covered claims and to
that extent has all rights, duties, and obligations of the impaired insurer as if the insurer had not
become impaired." Id. Significantly, the legislature did not simultaneously alter the priority
provisions of the liquidation statute.

 In 1993, the legislature revised the Guaranty Act to explicitly require TPCIGA to
provide a defense to policyholders when such a defense would constitute a "covered claim." 
Specifically, the subsection was amended as follows to include the italicized phrase: 


The association shall undertake to discharge the policy obligations of the impaired
insurer, including the duty to defend insureds under a liability policy, to the extent
that the policy obligations are covered claims under this Act.



Act of June 17, 1993, 73d Leg., R.S., ch. 685, § 9.07, 1993 Tex. Gen. Laws 2559, 2633-34. 

 That the legislature intended for the guaranty association to fulfill the policy
obligations of the impaired insurer is clear from the placement of the added language. The "duty
to defend" language was added to a subsection setting forth the policy obligations of the impaired
insurer to be assumed by TPCIGA. TPCIGA, as well as other guaranty associations covered by
the statute, then, has a statutory duty to defend under a policy of insurance. The other main
policy obligation is the duty to indemnify the insured for certain damages. These two policy
benefits, a defense if sued and indemnity for loss, are policy obligations of the guaranty
association. Significantly, again no change was made in the priority provisions of the liquidation
statute in 1993.

 A statute is presumed to have been enacted by the legislature with complete
knowledge of existing law and with reference to it. See Acker v. Texas Water Comm'n, 790
S.W.2d 299, 301 (Tex. 1990). When a new section is added to a statute, that new section must
be construed in light of the original statute. See Schlichting v. Texas State Bd. of Medical
Examiners, 310 S.W.2d 557, 563 (Tex. 1958). Likewise, when the legislature re-enacts a statute
without change, as it did with section 8 of the liquidation statute prior to 1995, the legislature is
presumed to concur with the administrative interpretation. See Associated Indem. v. Oil Well
Drilling Co., 258 S.W.2d 523, 529 (Tex. Civ. App.--Dallas 1953), aff'd, 264 S.W.2d 697 (Tex.
1954). Analyzing the amendments to the Guaranty Act in light of the circumstances that existed
when they were enacted and the legislature's decision not to change the priority provisions of the
liquidation statute until 1995, we conclude that prior to 1995 the legislature concurred with the
existing scheme in which defense costs generally were entitled to Class 2 priority.

 The Guaranty Act sheds further light on the interpretation of the priority scheme. 
Section 11(c) of the Act provides that settlements and payments by TPCIGA on covered claims
shall have "priority equal to that which the claimant would have been entitled to in the absence
of this Act against the assets of the impaired insurer." The parties do not dispute that claimants
under policies of insurance have Class 2 claims for either indemnity for loss or legal defense
costs. TPCIGA argues, however, that the statutory scheme represents the legislature's intent to
treat claims of a guaranty association differently--and more favorably--than those of a policyholder. 
We disagree. As the Guaranty Act provides, TPCIGA can only have the same priority that the
policyholder would be entitled to if TPCIGA did not exist. When the legislature sought to give
preference to the guaranty associations because of their unique role in insurance company
insolvency, it did so in express language. We are unpersuaded that the language of the statute
supports appellant's argument that the legislature sought to advantage the associations with respect
to defense costs. Rather, we determine that the legislature did not intend TPCIGA defense cost
claims to be superior to those of policyholders. Thus, this analysis accomplishes the goal of equal
priority enunciated in section 11(c).

 Our conclusion is also consistent with the position taken by the Commissioner of
Insurance. We give serious consideration to an agency's interpretation of an ambiguous statute
that it is charged with enforcing, especially when the agency has special expertise in the area, so
long as that interpretation is reasonable. See Tarrant Appraisal Dist., 845 S.W.2d at 823; Texas
Utils. Elec. Co., 962 S.W.2d at 726. The Commissioner urges that the legislature designed a
scheme in which policyholders, as consumers, would receive as much of their expectation of
insurance coverage as possible, even in the adverse situation of a receivership. The purpose of
the liquidation statute is to "conserve the assets and protect the rights of policyholders and
claimants" to accomplish the liquidation or rehabilitation of an insolvent insurer. See Tex. Ins.
Code Ann. art. 21.28, § 2(e). We agree with the Commissioner that this goal is best achieved
by the classification of defense costs by similarly situated creditors as Class 2 rather than Class
1 claims. (4) 

 The parties agree that TPCIGA's payments on indemnities for loss on covered
claims of policyholders are Class 2 claims. They further agree that claims by policyholders for
amounts not covered by TPCIGA are Class 2 claims. And, further, the parties do not dispute that
amounts paid by policyholders to defend on claims not covered by TPCIGA are Class 2 claims. 
Appellees' argument, then, that defense costs paid by TPCIGA are also Class 2 claims, carries
persuasive force given the coherence and consistency that results from a Class 2 classification. 
Accordingly, we agree with appellees that appellant's defense costs are to be accorded Class 2
priority. 


CONCLUSION

 In light of our conclusions above, we hold that the district court did not err in
granting appellees' motion for summary judgment, because, prior to the 1995 amendment, the
phrase "all of the expenses of an insurance guaranty association . . . in handling claims" as set
forth in Insurance Code article 21.28, section 8(a)(2)(A)(ii) does not include costs incurred in
defending insureds under liability and workers' compensation policies of the estates and that costs
incurred by TPCIGA in defending the policies are entitled to Class 2 priority under section
8(a)(2)(B)(ii). Accordingly, we affirm the judgment of the district court.



 

 Jan P. Patterson, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: February 10, 2000

Do Not Publish
1. Tex. Ins. Code Ann. art. 21.28-C (West Supp. 2000) ("the Guaranty Act"). The
purposes of the Act are to (i) provide a mechanism for the payment of covered claims to avoid
excessive delay in payment; (ii) avoid financial loss to claimants or policyholders because of the
impairment of an insurer; (iii) assist in the detection and prevention of insurer insolvencies; and
(iv) provide an association to assess the costs among insurers. See id. § 2. 
2. Tex. Ins. Code Ann. art. 21.28 (West Supp. 2000).
3. The liquidation statute has been amended by the legislature since the estates at issue 
were placed in receivership. The version of the Insurance Code in place on the date rights are
fixed is the statute that determines the issues here. All rights are fixed as of the date of
receivership. See Tex. Ins. Code Ann. art. 21.28, § 2(c); Durish v. Channelview Bank, 809
S.W.2d 273, 275 (Tex. App.--Austin 1992, writ denied). ECC and ENIC were placed into
receivership in 1994; therefore, the liquidation statute as amended by Act of June 17, 1993, 73d
Leg., R.S., ch. 685, §§ 8.01-.07, 1993 Tex. Gen. Laws 2559, 2626-30 is the relevant version. 
As the provisions we rely on have not been substantially altered by subsequent amendments, for
convenience we will cite the current version of the liquidation statute unless otherwise indicated.

4. We find deference to an agency's interpretation of a statute particularly appropriate
where, as here, the Commissioner is charged with the administration of the liquidation statute and
the Guaranty Act and is charged with oversight of TPCIGA itself. See Tex. Ins. Code Ann. art.
21.28, § 2(a) ("It is the intent of the legislature that oversight of the special deputy receivers and
guaranty associations shall be conducted by the commissioner."). 



at the legislature designed a
scheme in which policyholders, as consumers, would receive as much of their expectation of
insurance coverage as possible, even in the adverse situation of a receivership. The purpose of
the liquidation statute is to "conserve the assets and protect the rights of policyholders and
claimants" to accomplish the liquidation or rehabilitation of an insolvent insurer. See Tex. Ins.
Code Ann. art. 21.28, § 2(e). We agree with the Commissioner that this goal is best achieved
by the classification of defense costs by similarly situated creditors as Class 2 rather than Class
1 claims. (4) 

 The parties agree that TPCIGA's payments on indemnities for loss on covered
claims of policyholders are Class 2 claims. They further agree that claims by policyholders for
amounts not covered by TPCIGA are Class 2 claims. And, further, the parties do not dispute that
amounts paid by policyholders to defend on claims not covered by TPCIGA are Class 2 claims. 
Appellees' argument, then, that defense costs paid by TPCIGA are also Class 2 claims, carries
persuasive force given the coherence and consistency that results from a Class 2 classification. 
Accordingly, we agree with appellees that appellant's defense costs are to be accorded Class 2
priority. 


CONCLUSION

 In light of our conclusions above, we hold that the district court did not err in
granting appellees' motion for summary judgment, because, prior to the 1995 amendment, the
phrase "all of the expenses of an insurance guaranty association . . . in handling claims" as set
forth in Insurance Code article 21.28, section 8(a)(2)(A)(ii) does not include costs incurred in
defending insureds under liability and workers' compensation policies of the estates and that costs
incurred by TPCIGA in defending the policies are entitled to Class 2 priority under section
8(a)(2)(B)(ii). Accordingly, we affirm the judgment of the district court.



 

 Jan P. Patterson, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: February 10, 2000

Do Not Publish
1. Tex. Ins. Code Ann. art. 21.28-C (West Supp. 2000) ("the Guaranty Act"). The
purposes of the Act are to (i) provide a mechanism for the payment of covered claims to avoid
excessive delay in payment; (ii) avoid financial loss to claimants or policyholders because of the
impairment of an insurer; (iii) assist in the detection and prevention of insurer insolvencies; and
(iv) provide an association to assess the costs among insurers. See id. § 2. 
2. Tex. Ins. Code Ann. art. 21.28 (West Supp. 2000).
3. The liquidation statute has been amended by the legislature since the estates at issue 
were placed in receivership. The version of the Insurance Code in place on the date rights are
fixed is the statute that determines the issues here. All rights are fixed as of the date of
receivership. See Tex. Ins. Code Ann. art. 21.28, § 2(c); Durish v. Channelview Bank, 809
S.W.2d 273, 275 (Tex. App.--Austin 1992, writ denied). ECC and ENIC were placed into
receivership in 1994; therefore, the liquidation statute as amended by Act of June 17, 1993, 73d
Leg., R.S., ch. 685, §§ 8.01-.07, 1993 Tex. Gen. Laws 2559, 2626-30 is the relevant version. 
As the provisions we rely on have not been substantially altered by subsequent amendments, for
convenience we will cite the current version of the liquidation statute unless otherwise indicated.

4. We find deference to an agency's interpretation of a statute particularly appropriate
where, as here, the Commissioner is charged with the administration of the liquidation statute and
the Guaranty Act and is charged with oversight of TPCIGA itself. See Tex. Ins. Code Ann. art.
21.28, § 2(a) ("It is the intent of the legislature that oversight of the special deputy receivers and
guaranty associations shall be conducted by the commissioner.").