**· STATE of Tennessee, Appellant,**

v.

**John Russell LANN, Appellee.**

Court of Criminal Appeals of Tennessee.

Feb. 2, 1978.

Certiorari Denied by Supreme Court
July 10, 1978.

Brooks McLemore, Jr., Atty. Gen., Robert A. Grunow, Asst. Atty. Gen., Nashville, David C. Wade, Asst. Dist. Atty., Memphis, for appellant.

Raymond M. Briggs, Timothy R. DiScenza, Memphis, for appellee.

## OPINION

TATUM, Judge.

The Governor of Tennessee issued his warrant authorizing the arrest and rendition of appellee pursuant to extradition requisitions from the Governor of Alabama. Appellee filed his petition for writ of habeas corpus in the Criminal Court of Shelby County alleging that he was illegally restrained because the request of the Governor of Alabama does not conform to the laws of Tennessee and that he was not present in the State of Alabama during the days when the crime for which he was charged was committed. The Trial Judge found that the appellee was not in the State of Alabama when the crime was committed and granted *habeas corpus.* The appellant has brought writ of error to this court.

The only assignment of error is that the Trial Court erred in finding that appellee had sustained the burden of proof in establishing his absence from the demanding state at the time of the commission of the crime charged to have been committed in Alabama. The assignment is well taken.

We now summarize the evidence. Lieutenant Nick Abbott testified that the Opelika, Alabama Police Department received a complaint from Ms. E. G. Clark of Opelika, Alabama that she gave a check in the sum of $691.80 to one of two men who had contracted with her to repair the roof on her home. The men left after doing only a small portion of the repair work. Lieutenant Abbott examined the roof and found that only a minimal amount of work had been done. Ms. Clark was 83 years of age, had bone deterioration, and could not travel to Memphis to testify.

Lieutenant Abbott introduced the check into evidence. It was dated 8 January 1975, made payable to "John R. Land." The endorsement bore the signature "John R. Lan —" (the last letter is not discernible). Below the endorsement was a Mississippi driver's license number and a birthdate, 8/1/13, that had been written on the check by a teller at the bank when the check was cashed in Opelika, Alabama. The driver's license number was that of the appellee. A photograph of the appellee obtained from the Tupelo, Mississippi Police Department was shown to Ms. Clark together with five other photographs, and Ms. Clark selected the photograph of the appellee as being the person to whom she had given the check. The endorsement signature on the check was strikingly similar to known signatures of the appellee.

Ms. Gibson testified that the appellee was at her "beer joint" in Memphis, Tennessee, practically every day, staying "pretty much all day every day," and that on 7 January 1975, appellee gave her a receipt for a payment made on a loan.

The appellee testified that on the 6th of January, 1975, he became involved in putting a new roof on the back of his house and garage and the work actually began on 7 January 1975. His mother died on 23 December 1975 and he did not leave Memphis for any purpose from 30 to 45 days after his mother's death. The appellee had on his person a Mississippi driver's license bearing number 000–22–1336 which was the same number written under the endorsement on the check. It also bore the date of his birth which was 8/1/13. The appellee testified that he lost his billfold the "latter part of 1974" and when it was recovered, his driver's license was missing. He testified that "it must have been August of 75" when the license he had on his person was issued. The photocopy of the license the appellee had at trial shows no date of issue. The appellee testified that he was a carpenter by trade and had done "a little" roofing.

Officer T. D. Rogers of the Memphis Police Department testified that he bought a shotgun from appellee on 7 January 1975 in Memphis, Tennessee, and obtained a receipt, bearing that date, for the purchase price of the shotgun. On the next day, 8 January 1975, the appellee brought the officer some shotgun shells. The officer saw appellee almost every day in Memphis in January of 1975.

Mr. Dan Parham testified that he was in the roofing business and contracted with the appellee in Memphis to do work on his garage and home on 7 January 1975, and had a written contract bearing that date. The contract showed that it was paid 7 January 1975. The witness started the job on 7 January and finished it on 8 January and knows that the appellee was not out of the city of Memphis during January 1975. The witness testified that appellee did "contracting work"—more roofing than anything else. The witness did sub-contract work for appellee because appellee was suffering with cancer.

Earl Bullock testified that he was at Mr. Lann's home in Memphis, Tennessee on 7 January and 8 January 1975, assisting Mr. Parham with the roof work. He saw the appellee in Memphis on those days.

R. M. Bradford testified that he worked at Mr. Lann's home on 6 January and 7 January 1975 and gave him a receipt for payment for the work on 7 January 1975.

Mr. Warren E. Gene said that he had coffee with the appellee on 7 January and 8 January 1975 at Ms. Gibson's establishment. He could be certain of the dates because during the "last three years he hasn't missed one day being there," except for one day when his mother died in December, 1974. The witness testified that the appellee was not ill with cancer except for a skin cancer on his nose that was removed at a doctor's office three or four months before.

Appellee's wife testified that the appellee was in Memphis every day through the month of January, 1975.

In determining whether extradition should be denied on the ground that the accused was not in the demanding state at the time of the commission of the crime, the rule governing the courts of the asylum state (Tennessee) is set out in *State v. Turner,* 207 Tenn. 93, 338 S.W.2d 558 (1960):

"By reading the evidence presented herein it clearly does not appear beyond a reasonable doubt that these defendants were not in the State of Georgia at the time of the alleged crime. The fact is one could reach the conclusion from the evidence that they were there. The evidence is more or less offered to support an alibi, and, of course, as we know, such evidence is easily concocted, and it is very easy for people to mistake a time. The case just cited cites other cases of when and where, and in one it is even shown that under *habeas corpus* proceedings when a man was not there for some days the court has held when the Governor has issued the extradition, as he may do on evidence that is not strictly legal, then these questions are primarily for the trial court where the crime is alleged to have been committed as a defense to the commission of the crime. *In other words, in these habeas corpus proceedings we do not try the case as it is tried against the accused when he is accused of a crime.* It is tried by the courts of the asylum State on the petition for *habeas corpus* on the theory and basis to see whether or not the men were probably in the State at the time. *What is meant by the proposi-tion 'beyond a reasonable doubt' is that if it is shown beyond question,* while the court is trying the case on *habeas corpus* in the asylum State, that the man was not there, then the writ would be granted, but *where there is a question the writ would be denied."* [Emphasis supplied.]

In applying the above-quoted rule from *State v. Turner, supra,* we find that the evidence preponderates against the findings of the Trial Judge and find a strong question as to whether the appellee was in the demanding State at the time of the crime. The endorsement signature on the check given in Alabama is strikingly similar to the genuine signature of appellee. The person who cashed the check in Alabama on January 8, 1975, was in possession of the appellee's driver's license. The appellee was in fact in the roof repair business. The victim in Alabama identified the appellee from six photographs as the person with whom she contracted in Alabama. This evidence preponderates against the Trial Judge's finding.

The Trial Judge, in considering whether the appellee could have been in Memphis and also in Opelika on the 7th and 8th of January, said that, "It could very well be done." The Trial Judge declined to make a determination as to whether the signature on the check given by Ms. Clark in Alabama was the signature of the appellee because he was not "an expert." Further, the Trial Judge did not give weight to the identification evidence of the Alabama Policeman. The learned Trial Judge overlooked the proper standards in considering the evidence. *McLaughlin v. State,* 512 S.W.2d 657, (Tenn.Cr.App.1974).

The principles in *McLaughlin v. State, supra* that rules of evidence in extradition proceedings shall not be rigidly applied, and that evidence should be construed liberally in favor of the demanding state are necessitated by Article IV, Section 2 of the United States Constitution mandating interstate extradition. The constitutional provision would be thwarted were it not for these rules. It would be extremely impracticable if not impossible, for a demanding

state to meet the technical rules of evidence in a trial in the asylum state and carry on a full scale trial with witnesses brought from the demanding state to the asylum state on such an issue as alibi. We sustain the State's assignment of error.

The judgment of the Criminal Court is reversed and we order the Governor's rendition warrant executed.