# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00081-CV

**Appellant, City of San Antonio, acting by and through the City Public Services Board of San Antonio// Cross-Appellants, Bastrop Central Appraisal District and Appraisal Review Board for Bastrop County**

**v.**

**Appellees, Bastrop Central Appraisal District and Appraisal Review Board for Bastrop County// Cross-Appellee, City of San Antonio, acting by and through the City Public Services Board of San Antonio**

## FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT NO. 24,590, HONORABLE REVA TOWSLEE CORBETT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The City of San Antonio, acting by and through the City Public Services Board of San Antonio ("CPS Energy"), appeals the trial court's summary judgment affirming the cancellation of a property tax exemption for the 1999-2003 tax years. On cross-appeal, the Bastrop Central Appraisal District and the Appraisal Review Board for Bastrop County (collectively the "District") challenge the trial court's sanctions award of $1,000 in attorney's fees and costs to CPS Energy. Because we conclude on the facts of this case that CPS Energy was no longer using the property in question for a public purpose, we affirm the trial court's judgment. Finding no abuse of discretion, we also affirm the trial court's award of sanctions.

**FACTS AND PROCEDURAL BACKGROUND**

*Property Tax Exemption*

CPS Energy is a municipally owned utility company that provides electricity to retail customers in the San Antonio area. In the 1950s, CPS Energy began purchasing land containing lignite[1] reserves in Bastrop and Lee Counties. CPS Energy's stated purpose in purchasing the lignite reserves was to diversify its fuel supply used to generate electricity for the benefit of its customers. By the late 1990s, CPS Energy had acquired about 15,000 acres of lignite-bearing lands. Of the lands owned by CPS Energy, about 6,200 acres lie in Bastrop County, and the remaining 4,800 acres lie in Lee County. All of the CPS Energy lands are within the taxing jurisdiction of the Bastrop County schools. Nevertheless, these lands were considered tax-exempt by the District and other taxing authorities as "public property used for a public purpose." *See* Tex. Const. art. VIII, § 2; *Id.* art. XI, § 9; Tex. Tax Code Ann. § 11.11(a) (West Supp. 2006).

In the late 1980s, CPS Energy obtained more favorable rates for western coal in part because of its lignite holdings. This led to CPS Energy's construction and completion of a 585-megawatt western coal power plant in 1992. In the late 1990s, CPS Energy began planning for the addition of a new natural gas plant, since the capital costs for gas generation facilities were much lower than those for coal or lignite facilities. Then, in 1998, CPS Energy determined that its plans for lignite development would not occur before 2018, so CPS Energy decided to lease its lignite reserves to Alcoa, Inc.

---

[1] Lignite is a low-grade form of coal that can be used as a fuel source to generate electric power.

CPS Energy signed the lease with Alcoa on December 28, 1998. The initial term of the lease expires on December 31, 2013, and Alcoa has the right to extend the term of the lease until 2043. Although CPS Energy retains a limited right to purchase extracted lignite from Alcoa, under the express terms of the lease, Alcoa is entitled "to mine, extract, and remove" 100% of the lignite "for the *exclusive* use and benefit of Alcoa." (Emphasis added.)

Upon discovery of the lease between CPS Energy and Alcoa, the District notified CPS Energy in a letter dated March 26, 2003, that it was revoking the public property exemption for CPS Energy's property effective January 1, 1999. The District's letter further notified CPS Energy that the District would be assessing back taxes on the appraised market value of the land for 1999 through 2003.[2] CPS Energy filed a timely protest, which was ultimately rejected by the chief appraiser. CPS Energy then appealed to the Appraisal Review Board for Bastrop County. Following a hearing, the Board issued an order denying CPS Energy's protest and upholding the decision of the chief appraiser.

CPS Energy filed suit in Bastrop County District Court challenging the Board's order. Both CPS Energy and the District moved for summary judgment. The trial court denied CPS Energy's motion and granted summary judgment in favor of the District.

---

[2] The District granted CPS Energy's application for open-space agricultural appraisal for 2003 and subsequent years. *See* Tex. Tax Code Ann. § 23.51 (West Supp. 2006). Thus, the District has informed the Court by letter, and CPS Energy agrees, that this appeal concerning the denial of the public-purpose exemption and back assessment of taxes covers only the period 1999 to 2003.

*Sanctions Order*

During the trial court proceedings, the District moved for entry of a scheduling order after the suit had been pending for twenty months and the Level 2 discovery period had expired. The trial court denied the District's motion on May 11, 2005. Two months later, the District filed a "Second Motion for Pre-Trial Conference and Entry of Scheduling Order." In response, CPS Energy filed a motion for sanctions and requested a hearing. Because the parties could not agree on a setting before the court in Bastrop County, they traveled to Burleson County for the hearing.[3] At the hearing, CPS Energy requested sanctions in the form of attorney's fees for having to travel to Burleson County and respond to and re-argue the same motion that had already been denied. The trial court denied the District's second motion for entry of a scheduling order and awarded sanctions of $1,000 in attorney's fees and costs to CPS Energy for "again having to respond to and address the same issues . . . previously heard and denied by the Court."

## STANDARD OF REVIEW

We review the trial court's grant of summary judgment *de novo*. *Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 156 (Tex. 2004); *Provident Accident & Life Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When both parties file motions for summary judgment and the trial court grants one and denies the other, we review both parties' summary judgment evidence, decide all questions presented, and render the judgment the trial court should have rendered. *Dow Chem.*

---

[3] The trial judge assigned to this case, the Honorable Reva Towslee Corbett, presides over the 335th Judicial District of Texas, which is composed of Bastrop, Burleson, Lee and Washington Counties. *See* Tex. Gov't Code Ann. § 24.481 (West 2004).

4

*Corp. v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002). We apply the well-established standards for reviewing motions for summary judgment: (1) the movant must demonstrate there is no genuine issue of material fact and it is entitled to judgment as a matter of law; (2) in deciding whether a disputed issue of material fact exists that would preclude summary judgment, we take all evidence favorable to the non-movant as true; and (3) we indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

We review the trial court's sanctions order for abuse of discretion. *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam). When deciding whether the trial court abused its discretion, we must ensure that the sanctions were appropriate or just. *Id*. We will reverse a sanctions order only if the trial court acted without regard to any guiding rules and principles. *Id*.

## DISCUSSION

The material facts in this case are not in dispute. CPS Energy claims that the trial court erred in affirming the District's denial of a property tax exemption under article VIII, section 2, of the Texas Constitution and section 11.11(a) of the tax code. CPS Energy argues that it was entitled to a property tax exemption because the property in question was public property used for a public purpose as described in the statute. Moreover, CPS Energy argues that it was not required to establish that the property in question was used exclusively for a public purpose in order to qualify for the exemption. The District contends that CPS Energy is not entitled to a property tax exemption

for tax years 1999 to 2003 because once CPS Energy signed the lease with Alcoa in 1998, the land in question ceased being used for a public purpose.

In deciding whether CPS Energy is entitled to the exemption it seeks, we are mindful of the general rule that statutes creating tax exemptions are to be construed strictly against the taxpayer and in favor of the taxing authority. *See First Baptist Church v. Bexar County Appraisal Review Bd.*, 833 S.W.2d 108, 117 (Tex. 1992); *Texas Utils. Elec. Co. v. Sharp*, 962 S.W.2d 723, 726 (Tex. App.—Austin 1998, pet. denied). The reasons for this rule are two-fold. Exemptions are matters of legislative "grace." *Commissioner of Internal Revenue v. Sullivan*, 356 U.S. 27, 28 (1958). Moreover, a narrow construction of tax exemptions promotes uniformity and equality by spreading the burden of taxation. *Texas Utils. Elec. Co.*, 962 S.W.2d at 726.

The Texas Constitution provides that all real property is subject to taxation unless exempt. Tex. Const. art. VIII, § 1(b). Article VIII, section 2, provides that "the legislature may, by general laws, exempt from taxation public property used for public purposes." *Id*. art. VIII, § 2. In addition, article XI, section 9, states that "[t]he property of counties, cities and towns, owned and held only for public purposes . . . and all other property devoted exclusively to the use and benefit of the public shall be exempt from forced sale and from taxation." Tex. Const. art. XI, § 9. Exercising its authority under article VIII, the legislature has enacted section 11.11(a) of the tax code, which states in relevant part that "property owned by this state or a political subdivision of this state is exempt from taxation if the property is used for public purposes." Tex. Tax Code Ann. § 11.11(a).

CPS Energy argues that the trial court incorrectly applied the law to find that CPS Energy was not entitled to a property tax exemption under article VIII, section 2. We disagree.

Both article VIII, section 2, and article XI, section 9, of the constitution, as well as section 11.11(a) of the tax code, require that public property be used for a public purpose to qualify for a tax exemption. Tex. Const. art. VIII, § 2; *Id.* art. XI, § 9; Tex. Tax Code Ann. § 11.11(a). Texas courts have consistently held that when public property is leased to a private party for private commercial purposes, such property is not "used for a public purpose," and therefore, is not entitled to a tax exemption. *Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 870 (Tex. App.—Austin 2002, pet. denied) (state-owned building leased to private realty company not entitled to exemption); *Hays County Appraisal Dist. v. Southwest Tex. State Univ.*, 973 S.W.2d 419, 423 (Tex. App.—Austin 1998, no pet.) (university building and parking lot leased to private attorneys and commercial tenants not entitled to tax exemption); *Grand Prairie Hosp. Auth. v. Dallas County Appraisal Dist.*, 730 S.W.2d 849, 851 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (hospital office building leased to private physicians not entitled to tax exemption); *Grand Prairie Hosp. Auth. v. Tarrant Appraisal Dist.*, 707 S.W.2d 281, 284 (Tex. App.—Fort Worth 1986, writ ref'd n.r.e.).

The record reflects that CPS Energy signed the lease with Alcoa for the lands in question on December 28, 1998, and CPS Energy acknowledges that the lease covers all of its lignite reserves in Bastrop and Lee Counties. Under the terms of the lease, CPS Energy gave up the right to extract any and all lignite from the lands in question. Although CPS Energy contends that it maintained the right under the lease to purchase lignite from Alcoa in the future, we conclude that

this right is speculative at best and, in any event, is not the same as the right to mine or extract lignite in the first instance. Section 2.01 of the lease expressly states that CPS Energy granted Alcoa "the right to mine, extract and remove the lignite . . . *for the exclusive use and benefit of Alcoa*." (Emphasis added.) On these facts, we conclude that CPS Energy has leased the lands in question to Alcoa for private commercial purposes and is no longer using the lands in question for a public purpose within the meaning of article VIII, section 2, of the constitution or section 11.11(a) of the tax code. Thus, as a matter of law, CPS Energy is not entitled to a tax exemption under either article VIII, section 2, or section 11.11(a). *See Gables Realty Ltd. P'ship*, 81 S.W.3d at 870; *Hays County Appraisal Dist.*, 973 S.W.2d at 423; *Dallas County Appraisal Dist.*, 730 S.W.2d at 851; *Tarrant Appraisal Dist.*, 707 S.W.2d at 284.

To the extent CPS Energy argues that article VIII, section 2—unlike article XI, section 9—does not expressly require exclusive use for a public purpose in order to receive a tax exemption, we need not reach that argument given our conclusion that CPS Energy ceased using the land in question for any public purpose when it signed the lease with Alcoa. Moreover, the relevant case law does not support this claim. The only appellate decisions to consider whether section 11.11(a) requires exclusive public use articulate a single standard derived from article XI, section 9, of the constitution, which requires exclusive public use. *Dallas County Appraisal Dist.*, 730 S.W.2d at 851; *Tarrant Appraisal Dist.*, 707 S.W.2d at 284. While article XI, section 9, speaks only of property owned by "counties, cities and towns," the Texas Supreme Court held in *Lower Colorado River Authority v. Chemical Bank & Trust Co.*, 190 S.W.2d 48, 50 (Tex. 1945), that it extends to the property of any governmental agency. The Court has since reaffirmed this holding

in *Satterlee v. Gulf Coast Waste Disposal Authority*, 567 S.W.2d 773, 779 (Tex. 1978), and *Leander Independent School District v. Cedar Park Water Supply Corp.*, 479 S.W.2d 908, 911-13 (Tex. 1972). For these reasons, we conclude that the District has demonstrated there is no genuine issue of material fact and that the District was entitled to judgment as a matter of law. We overrule CPS Energy's issues on appeal.

We next turn to the District's challenge to the trial court's award of sanctions. The District contends that the trial court erred in awarding sanctions because the trial court failed to find that the District's conduct was done for purposes of harassment or to increase the cost of the lawsuit. As noted above, we review the trial court's order of sanctions for abuse of discretion. *American Flood Research, Inc.*, 192 S.W.3d at 583. The supreme court has held that an appellate court is not bound by the trial court's findings of fact when reviewing a trial court's sanctions order. *Id.* The trial court's discretion to impose sanctions does not depend on whether the trial court issues a particular finding; rather the appellate court must independently review the entire record to determine whether there has been an abuse of discretion. *Id.*

Having reviewed the record, including the pleadings filed by the District and the transcript of the sanctions hearing, we cannot say that the trial court abused its discretion in imposing sanctions against the District. Rule 13 of the rules of civil procedure requires a court to presume that pleadings, motions, and other papers are filed in good faith and prohibits a court from imposing sanctions except for good cause, the particulars of which must be stated in the sanctions order. Tex. R. Civ. P. 13. The rule states that attorneys or parties shall not file pleadings in bad faith or make groundless statements in pleadings for the purpose of securing a delay. *Id.* The rule allows a court

9

to impose sanctions for rule violations. *Id.* In the sanctions order before us, the trial court expressly found that the District had re-filed the same motions already heard and denied by the court. The record reveals that the District waited almost two years after suit was filed, and well after the expiration of the Level 2 discovery period, before filing its initial request for entry of a scheduling order, which was denied by the trial court. In its second motion, the District presented no new evidence or justification for renewing its request for entry of a scheduling order. Instead, the District simply re-urged the same arguments previously denied by the trial court only two months earlier. On this record, we conclude that the trial court complied with rule 13 and that there was no abuse of discretion in the trial court's sanctions order. We overrule the District's sole issue on appeal.

**CONCLUSION**

Having determined that there was no genuine issue of material fact and that the District was entitled to judgment as a matter of law, we affirm the trial court's grant of summary judgment in favor of the District, and, finding no abuse of discretion, we affirm the trial court's award of sanctions.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: October 19, 2006

10